J. A. ENGLUND, Respondent, v. A. C. TOWNLEY, J. W. Brinton, W. R. Wyatt, L. H. Avery, M. B. McLaughlin, John Weinberger, John E. Flecten, and C. E. Gordon, Appellants.

(174 N. W. 755.)

**Constitutional law — right of free speech — responsibility for abuse of right.**

1. Section 9 of the state Constitution grants to every man the right to freely write, speak, and publish his opinion on all subjects, but makes one who abuses the right responsible for such abuse.

**Libel and slander — liability of those who libel or slander another.**

2. Under the laws of this state every person has, subject to the qualifications and restrictions provided by law, the right to protection from defamation by libel or slander, and any person who abuses the privilege of freedom of speech and liberty of the press by maliciously publishing libelous matter of or concerning another is liable to the person libeled for the injury occasioned by the publications.

**Libel and slander — statute construed.**

3. Any "false and unprivileged publication, by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, . . ." is libelous. Compiled Laws 1913, § 4352.

**Libel and slander — pleading — effect of general demurrer.**

4. A general demurrer to a complaint in an action for libel admits allegations of falsity, publication, and malice.

**Libel and slander — sufficiency of pleading.**

5. For reasons stated in the opinion it is *held* that the complaint states a cause of action.

Opinion filed July 22, 1919.

Appeal from the District Court of Ward County, *Leighton, J.*

Defendants appeal from an order overruling a general demurrer to the complaint.

Affirmed.

NOTE.—For authorities discussing the question of constitutional freedom of speech and of the press, see note in 32 L.R.A. 829.

On privilege as to words or publication relating to public officer, or candidate for office, see note in L.R.A. 1918E, 43.

*William Lemke* and *Neslos & Herigslad,* for appellants.

Attorneys' fees under the law are not proper elements of damage, and therefore should be stricken out as surplusage.    25 Cyc. 535; Grotius v. Ross, 24 Ind. App. 543, 57 N. E. 46; Irlbeck v. Bierle, 84 Iowa, 47, 50 N. W. 36.

In all actions of libel where the words charged do not constitute libel per se, special damages must be alleged in order to constitute a cause of action.    17 R. C. L. 391; Gustin v. Evening Press Co. (Mich.) 137 N. E. 674.

Unless the article is libel per se, the plaintiff before he can recover must allege and prove special damages resulting as a proximate result of the publication.    Gundram v. Daily News Pub. Co. (Iowa) 156 N. W. 842; King v. Sun Printing & Pub. Co. 82 N. Y. S. 787; R. R. Co. v. Delaney, 102 Tenn. 289.

"That publications respecting political affairs, public officers, and candidates for office, are in a measure privileged, is recognized by the overwhelming weight of authority."    17 R. C. L. 353; Pickett v. Talbott, 211 U. S. 199.

"There has always been a distinction between publications relating to public and private persons as to whether they are libelous.    A criticism might reasonably be applied to a public officer which would be libelous if applied to a private individual."    Herringer v. Inberg, 97 N. W. 463.

"Every citizen has a right to comment on those acts of public men which concern him as a citizen of the state, if he does not make his commentary a cloak for malice and slander."    Arnold v. Ingram (Wis.) 138 N. W. 119; Lyddiard v. Wingate, 155 N. W. 212; Wason v. Walter, L. R. 4 Q. B. 94.

"The meaning of the words cannot be enlarged by innuendo."    Huffland v. Journal Co. 60 N. W. 263.

"If a publication is not libelous *per se* on its face, it cannot be made so by innuendo."    Scheibley v. Ashton (Iowa) 106 N. W. 618.

"A writing, although charging wrongful conduct or dereliction of duty, is not libelous *per se* within the meaning of the rule unless it imputes a dishonest or fraudulent motive or intent."    25 Cyc. 258; 80 N. W. 1099, 102 N. W. 807.

The words "that he made false affidavit" are not actionable *per se,*

nor can an action be maintained upon them merely by an innuendo that they purport or were intended to purport perjury; in order to be actionable *per se,* they must charge the defendant with a crime. 97 N. W. 460; 42 N. W. 413; 80 N. W. 1098.

*McGee & Goss,* for respondent.

"It is well settled that to constitute libel, it is not necessary that written statements should contain an imputation of an offense that may be punished as a crime." 17 R. C. L. pp. 286, 287, ¶ 28.

"But a publication to be libelous need not contain a direct and open charge. If taking the words used in the ordinary acceptation, they convey a degrading imputation, no matter how indirectly, they are libelous." Id. p. 287.

"In determining whether or not a charge of dishonesty is actionable, much appears to depend on whether the accusation *is in writing* or is merely oral. . . . So in general there are many authorities holding charges of dishonesty in various forms libelous, when such charges are written or printed, even when the words merely intimate a suspicion of dishonesty." 17 R. C. L. p. 290, ¶ 28.

"The libel of a public officer, affecting him personally, is governed by the same rules that apply to an individual; but if it affects him in his official character, and is of such a nature that, if true, it would be cause for his removal from office, it is actionable *per se."* 17 R. C. L. 301, p. 40.

CHRISTIANSON, Ch. J. This is an action for libel. The defendants interposed a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and defendants appeal.

The complaint, the sufficiency of which is the sole question here, in substance charges:

That the plaintiff is an elector and citizen of this state, and a state senator from the second legislative district, and during the fifteenth legislative session was such state senator.

That during said legislative session the defendants conspired together and agreed to and did procure the malicious publication of a false, scandalous, and libelous article in many newspapers of the state, reading as follows:

"Be It Further Resolved, that it has been brought to our attention that J. A. Englund, now sitting as a senator in the senate body from this district, is not a citizen of the United States, has sworn allegiance to the King of England, having filed on a homestead in Canada, and in the province of Saskatchewan, which is not 'constitutional' and which is not in harmony with the present Constitution; and, further, that he has again violated our Constitution in accepting, holding, and drawing pay as a deputy bank examiner; and that he has held this office illegally, as the Constitution of North Dakota prohibits state senators from holding such positions, and further that it is not 'constitutional' for subjects of the King of England to act as bank examiners in North Dakota; and

"Be It Further Resolved, that we commend the new state bank examiner, J. R. Waters, for suspending the services of said J. A. Englund as deputy bank examiner and discontinuing his salary; and

"Be It Further Resolved, that we, the farmers of the second legislative district of North Dakota, do hereby ask, request, and demand that the said J. A. Englund immediately resign from the senate and allow his seat to be filled by the proper 'constitutional' procedure and by a citizen of the United States and of this district; and

". . . Be It Further Resolved, that a copy of these resolutions be sent to Governor Frazier, Attorney General Langer, the secretary of the senate, and also to the said J. A. Englund; and, further, that a committee be selected at this mass meeting to sign these resolutions and to request the publication of the same in the Fargo Forum, Fargo Courier News, the Non-Partisan Leader, the Minot Daily News, the Devils Lake Journal, and such other publications as may be deemed proper, including the local Kenmare papers.

"Signed by the Committee—219 Farmers."

That the said defendants maliciously caused and procured said false, scandalous, defamatory, and libelous statement to be published in the named newspapers and others, and at a certain meeting held at Kenmare, in this state, on or about January 30, 1917. That the statement was false, and known by all of the defendants to be false, in the following particulars:

(a) That said mass meeting did not unanimously adopt said resolutions; that no committee of volunteers or others to the number of 219

signed said statement, and that no greater number than ten, including the defendants, signed said statement.

(b) That the plaintiff has never sworn allegiance to, and is not and never has been a subject of, the King of England. But that on the contrary plaintiff is and always has been a citizen of the United States of America, and an elector of his precinct, county, and state.

(c) That plaintiff has never violated the Constitution of North Dakota in accepting, holding, and drawing pay as a deputy bank examiner, nor illegally held said office of deputy bank examiner; and that the statements and inferences in said article to the contrary are false and were known to be false by the defendants when made, composed, and published.

That by reason of the publication of said article plaintiff was held forth to public ridicule, obloquy, scandal, and disgrace; and exposed to the hatred, contempt, ridicule, and obloquy of his fellow citizens, friends, neighbors, and constituents, and the people of this state, all to the plaintiff's injury and damage in good name, reputation, and property.

It is elementary that a demurrer admits the truth of all issuable, relevant, material facts well pleaded. 31 Cyc. 233; 6 Enc. Pl. & Pr. 334; 6 Standard Proc. 943. Hence a general demurrer to a complaint in an action for libel "admits allegations of falsity and publication and malice." 25 Cyc. 469. See also 13 Enc. Pl. & Pr. 91, 92. "The demurrer tests the actionable character of the charge, and it will only be sustained where the court can affirmatively say that the publication is incapable of any reasonable construction which will render the words defamatory." 25 Cyc. 468; McCue v. Equity Co-op. Pub. Co. 39 N. D. 191, 167 N. W. 225.

The Constitution of this state provides that "every man may freely write, speak, and publish his opinions on all subjects, being responsible for the abuse of that privilege. In all civil and criminal trials for libel the truth may be given in evidence, and shall be sufficient defense when the matter is published with good motives and for justifiable ends; and the jury shall have the same power of giving a general verdict as in other cases; and in all indictments or informations for libels the jury shall have the right to determine the law and the facts under the direction of the court, as in other cases." N. D. Const. § 9.

Few rights guaranteed by the Constitution are more valuable than those of freedom of speech and liberty of the press, which are guaranteed by the section quoted. But freedom does not mean unrestrained license. The fact that a right is guaranteed does not mean that there is also granted a license to abuse that right. Our Constitution expressly recognizes this. For while it guarantees to every man the right to "freely write, speak, and publish his opinions on all subjects," and makes it permissive to publish the truth with good motives and for justifiable ends, it also provides that one who abuses that privilege shall be responsible therefor. N. D. Const. § 9.

In conformity with the principles of the Constitution our lawmakers have said that every person has, subject to the qualifications and restrictions provided by law, the right to protection from personal insult and defamation. Comp. Laws 1913, § 4350. Defamation may be affected by libel or slander. Comp. Laws 1913, § 4351. "Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Comp. Laws 1913, § 4352.

"A privileged communication is one made:

"1. In the proper discharge of an official duty.

"2. In any legislative or judicial proceeding, or in any other proceeding authorized by law.

"3. In a communication without malice to a person interested therein by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information.

"4. By a fair and true report without malice of a judicial, legislative or other public official proceeding, or of anything said in the course thereof.

"In the cases provided for in subdivisions 3 and 4 of this section, malice is not inferred from the communication or publication." Comp. Laws 1913, § 4354.

It will be noted that the statement involved in this action specifically charged:

1. That the plaintiff was not a citizen of the United States.

2. That he had foresworn allegiance to the United States of America, and taken an oath of allegiance to, and become a subject of, the King of Great Britain.

3. That therefore he was disqualified from holding the office of state senator, which he was then occupying, and subject to removal therefrom.

4. "That he has *again violated our Constitution*" in holding office as deputy bank examiner, and receiving payment for his services as such.

5. That plaintiff had been suspended from employment as deputy bank examiner and his salary as such discontinued by action of the state examiner.

6. That these charges were made by the people of the legislative district which plaintiff represented, in mass meeting assembled, and signed by a committee of 219 chosen at such mass meeting.

7. That such mass meeting and committee demanded that plaintiff resign his office as state senator.

The statement speaks for itself. There is no room for doubt that the imputations therein were directed against the plaintiff. And of course the demurrer admits that they were so directed. It also admits that the charges were false; that they were published, and that the publication was malicious. 25 Cyc. 469; 13 Enc. Pl. & Pr. 91, 92. The sole question, therefore, is whether the language of the statement standing alone is fairly susceptible of a defamatory meaning. Lauder v. Jones, 13 N. D. 525, 540, 101 N. W. 907. In other words, whether this court can say as a matter of law that the publication of the false charges standing alone could not reasonably have exposed plaintiff to hatred, contempt, ridicule, or obloquy, or caused him to be shunned or avoided, and as a result occasioned him injury.

The Constitution provides that no person shall be a senator who is not a qualified elector in the district in which he is chosen. N. D. Const. § 28. And that no person is an elector unless he is a citizen of the United States of America. N. D. Const. § 121. Our statutes provide that no person is eligible to office in this state who is not an elector (Comp. Laws 1913, § 19); and make it a crime for a person knowing himself not to be a qualified voter to vote or offer to vote at any election. Comp. Laws 1913, § 9259.

The statement under consideration positively charged that the plaintiff was holding office illegally,—that he was occupying an office which the Constitution said he was not qualified to hold. If the charge was true it would have been the duty of the senate to remove him from such office. The statement further charged that he had "again violated the Constitution" by holding the office of deputy bank examiner, and receiving payment as such, and that he had been suspended from such latter office by action of the state examiner. The article further represented that the people of the legislative district from which plaintiff had been chosen had proclaimed these alleged facts in resolutions adopted at a mass meeting and signed by a committee of 219, and that such people and in such resolutions had demanded that plaintiff resign from his office as state senator.

The authorities generally hold that imputations like those contained in this statement are libelous per se. 17 R. C. L. 301; 25 Cyc. 260, 346, 347; 18 Am. & Eng. Enc. Law, 905, 909, 920, 949, 950. In our opinion the complaint states facts sufficient to constitute a cause of action. The order appealed from must therefore be affirmed. It is so ordered.

BRONSON, J., did not participate, Honorable W. L. NUESSLE, of the Sixth District, sitting in his stead.

ROBINSON, J. (dissenting). This is an appeal from an order overruling a demurrer to the complaint in a political libel suit. It should be considered from the standpoint that such a suit is commonly a nuisance per se. It is the means of stirring up vindictiveness and rancor. It is quite sure to put the public and the parties to an expense for no purpose. The result is commonly a verdict of 5 cents or nothing, the same as the Roosevelt-Barnes suit, which was conducted for thirty days and resulted in a draw, and cost the parties and the public thousands of dollars.

The king of scandal loves a shining mark. All great men, from the President down to the state lawmakers, are continuously subject to libelous publications. It is to them like water on a duck's back. It advertises them and does them no harm. Thus the libelous matter so often published of and concerning Townley has given him an immensity of free advertising; it has done him a benefit, and not an injury.

The gravamen of this libel suit is that at a time when the famous H. B. 44 was before the legislative assembly, the plaintiff being a state senator, to induce him to vote for the bill, defendants conspired to publish of and concerning him certain false and defamatory resolutions, *viz.,*

Be it resolved that it has been brought to our attention that J. A. Englund, now sitting as a senator from this district, is not a citizen of the United States, has sworn allegiance to the King of England, has filed on a homestead in Canada. The rest of the complaint is mere innuendo and stuffing. Now, there is nothing immoral or illegal in swearing allegiance to the King of England or in taking a homestead in Canada. However, under the state Constitution it is illegal for a person to vote or hold office without being a citizen of the United States, but under the territorial statutes the right to vote and to hold office was given not only to citizens of the United States, but also to persons who had declared their intention to become a citizen, and in early days the same rule prevailed in Minnesota, Wisconsin, and in other states. It is only in recent years that the right to vote and hold office has been limited to citizens of the United States. However, without his first papers making him a full fledged citizen, a person might still hold office in good faith. It is not true that every person knows all about the changing laws and constitutions. There was nothing in the charge to seriously shock the sensibilities of the senator, or to injure him either in his own estimation or in the esteem of the people; and the fair presumption is that it did not injure him one particle. It is true the complaint avers that the senator gave the lawyers some money for writing a notice to the newspapers demanding a retraction of the libel because it was false, but the expense was needless and so was the notice; and of course the senator was competent to give such a notice without any expense.

In considering the case the court takes notice of H. B. 44, which must have been submitted as an educational measure. There was no possibility of the bill becoming a law, even though it had received the votes of every member in both houses. It is vain to say that party leaders do conspire to libel a member to gain his vote for such a bill.

The purpose of a complaint in a civil action is to concisely and truly state the facts of the case and to show a proper regard for the truth.

Here the complaint is a gross exaggeration. It charges that the libel has injured the plaintiff in the sum of $25,000—that may be considered as a libel on the plaintiff. His character and reputation would be of little value if it might be injured $25,000 or 25 cents by such a political item. In this case there is nothing to be gained by considering a thousand and one citations on this and that charge. The common law of political libel is undergoing a continuous and daily change. The people are paying less and less regard to such newspaper stuff, so that no one suffers from it, and the courts are no longer disposed to regard mere exaggerations which are manifestly untrue. The libel does not contain any matter sufficient to cause damages to the senator.

Order should be reversed and action dismissed.

GRACE, J. I concur in the result.