[File No. 6795]

OWEN McINTYRE, Margaret McIntyre, Mary Alice McIntyre, and Rose McIntyre, Appellants, v. THE STATE BOARD OF HIGHER EDUCATION, Consisting of the Following Members: P. J. Murphy, Chairman, Mrs. Matt Crowley, Vice-chairman, Fred J. Traynor, Howard Henry, Merle Kidder, Lars O. Fredrickson and Roy Johnson, and James E. Cox, President of the Valley City State Normal School, Called the Valley City Teachers College, Respondents.

(3 NW(2d) 463)

Opinion filed April 13, 1942

*J. K. Murray,* for appellants.

*Clyde L. Young,* for respondents.

632

Burke, J. The plaintiffs in this case, Owen McIntyre, Margaret McIntyre, Mary Alice McIntyre and Rose McIntyre, are father, mother, and daughters respectively. In September, 1939, the two daughters, Mary Alice and Rose, registered as students at the Valley City State Teachers' College. At the time they registered they were

presented with a bill for matriculation and other incidental fees for the first quarter of the school year. This bill was paid without protest. At the time of her registration, Rose was enrolled with the National Youth Administration and was receiving from this source the sum of $10 per month to help defray the cost of her education. In December, 1939, a bill for matriculation and incidental fees for the winter quarter of the school year was presented to plaintiffs. This bill, they refused to pay. About the same time, the enrolment of Rose with the National Youth Administration was canceled. Mary Alice and Rose, however, continued in school. Plaintiffs later attempted to make payment of the fees for the winter quarter with a check upon which the words "for tuition" were inscribed. This check the school authorities refused to accept upon the ground that the inscription incorrectly stated the nature of the charges. Mary Alice and Rose nevertheless continued in school until the end of the summer term of 1940, when they voluntarily left.

Plaintiffs brought this action in December, 1939, seeking injunctive relief against the State Board of Higher Education and the President of the State Teachers' College at Valley City. Specifically, they demanded (1) that the rules and regulations of the State Board of Higher Education which required the payment of matriculation and other incidental fees, be adjudged null and void; (2) that the defendants be enjoined from collecting from the plaintiffs the matriculation and other incidental fees for the quarter commencing in December, 1939; and, (3) that the order of the defendant canceling the enrolment of Rose in the National Youth Administration be vacated and that the court order her immediate reinstatement therein.

As a basis for the invocation of injunctive relief, the plaintiffs alleged (1) that the rules and regulations of the State Board of Higher Education pertaining to matriculation and other incidental fees are violative of the provisions of § 148, Constitution of North Dakota; (2) that if such fees were not paid by the plaintiffs they would be expelled from said Teachers' College, and deprived of the benefits of a free education; and, (3) that the defendant President of the State Teachers' College wrongfully, unlawfully, and arbitrarily procured the cancelation of the assistance which the National Youth Administration had been furnishing to Rose solely because she refused to obey said defend-

ants' unlawful orders that she move into one of the college dormitories in which the rent was beyond her ability to pay. The judgment of the trial court ruled that the regulations of the State Board of Higher Education which established matriculation and other incidental fees did not violate the Constitution, and dismissed the action. Plaintiffs appealed from the judgment and the case is here for a trial anew. We must therefore reinvestigate the law and the facts and "apply what we deem to be the law to the facts as disclosed by the record." Buckingham v. Flummerfelt, 15 ND 112, 115, 106 NW 403; Englert v. Dale, 25 ND 587, 142 NW 169.

At the trial of the case in district court in September, 1940, plaintiffs attempted to establish facts sufficient to justify the relief demanded. At that time, however, it appeared not only that Mary Alice and Rose had not been denied the privilege of attending the Teachers' College by reason of nonpayment of fees for the school quarter commencing in December, 1939, but that they had also been permitted to attend during the spring and summer quarters of 1940, at the end of which time they voluntarily left the school. None of the plaintiffs testified. The sole testimony upon this question is that of the defendant President Cox whose examination is in part as follows:

"Q. Now ordinarily if students don't pay their fees you remove them from school, don't you?

"A. That very rarely happens. Indeed, I can't recall a single instance of that kind since I have been at Valley City.

"Q. Well, because they paid, isn't that the reason?

"A. Well, many have not paid.

"Q. But anyhow, it is the object of your school to collect these fees from students?

"A. Yes, sir.

"Q. Now you still hold these charges against these two girls?

"A. Yes, sir.

"Q. And if they lose out in this lawsuit it is your expectation to collect for them.

"A. We shall attempt to collect them; yes, sir."

It is clear that at the time of the trial the plaintiffs had enjoyed in full all of the privileges which they had alleged would be denied them upon nonpayment of fees—and that the sole controversy remaining be-

tween the parties with respect thereto was whether or not the plaintiffs were indebted to the school.

In so far as plaintiffs' allegations relating to the reasons and motives for the discontinuance of National Youth Administration aid to Rose McIntyre are concerned, we think it sufficient to say that the record affirmatively and without dispute shows that these allegations are wholly unfounded.

Plaintiffs therefore failed to establish the alleged factual premises of irreparable injury upon which they relied to justify injunction. At the close of the testimony, all that remained in the lawsuit was a collateral issue of debt and an otherwise academic quandary as to whether certain rules and regulations of the State Board of Higher Education violated the Constitution.

Both at the trial of this action and upon this appeal, counsel for all parties were concerned principally with the issue of whether or not the rules and regulations of the State Board of Higher Education imposing incidental fees were invalid and unconstitutional or otherwise. Doubtless all parties would like to have this court decide that question. Mere anxiety of parties and their consent are not sufficient to vest this court with jurisdiction to decide a constitutional question. The function of this court is to determine actual controversies between litigants. State ex rel. Olsness v. McCarthy, 53 ND 609, 207 NW 436. As was said by Judge Christianson in Langer v. State, 69 ND 129, 142, 284 NW 245: . . . it goes without saying, litigants cannot by consent, either passive or express, dispense with necessary parties; or confer upon a person, who does not have a sufficient interest in a controversy to entitle him to bring suit, the right to sue, or transform a controversy that is not justiciable into one that is." See also State ex rel. Amerland v. Hagan, 44 ND 306, 175 NW 372, with regard to the "friendly test case" and 3 Dakota L. Rev. 273.

Before we may consider the constitutional question in this case, therefore, it must appear from the pleadings and the evidence that plaintiffs would be entitled to relief by injunction in the event their contention that the incidental fees were unconstitutional should be correct. If they would not be entitled to the relief demanded in any event, then the constitutional question, not being decisive of any issue, is

moot and may not be decided. King v. Baker, 69 ND 581, 288 NW 565, 125 ALR 730.

What the prerequisites to injunctive relief are is well settled. In order to be entitled to an injunction, plaintiffs must establish some actual or threatened and irreparable injury to their rights for which there is no adequate legal remedy. 28 Am Jur 370, Injunctions, § 182; Lockwood v. Baird, 59 ND 713, 231 NW 851; King v. Baker, supra; 3 Dakota L. Rev. 273. The right which plaintiffs asserted they were seeking to protect in this case was the right of the daughter plaintiffs to attend school without the payment of certain fees. As has already been pointed out, the record not only fails to show an actual or threatened injury to that right, but it affirmatively shows a full enjoyment thereof.

True, there remains the question of whether or not the plaintiffs are indebted to the school on account of such fees. That question, however, is not directly at issue in the case. Defendants did not by cross complaint or counterclaim demand judgment on that account. In the event that at some future time the school authorities should bring suit to collect the fees, plaintiffs' right to defend in that action is an adequate legal remedy. 28 Am Jur 238, Injunctions.

Since plaintiff failed at the trial of this case to establish any basis for injunctive relief, the action should have been dismissed for that reason and the question of the constitutional validity of the incidental fees should not have been decided. The case is therefore remanded to the district court with directions to enter a new judgment of dismissal in accordance with this opinion.

CHRISTIANSON and NUESSLE, JJ., and GRONNA, Dist. J., concur.

Mr. Justice MORRIS, deeming himself disqualified, did not participate, HON. A. J. GRONNA, Judge of the Fifth Judicial District, sitting in his stead by request.

BURR, Ch. J. (dissenting). I cannot concur in the disposition of this case. The complaint charges that two of the plaintiffs were attending the State Normal School at Valley City, were qualified to enter the school, were assisted financially by the National Youth Adminis-

tration; that the school and its management required them to pay tuition for attending; that the defendants promulgated a rule raising the tuition fees; sets out the fees required to be paid; and that this was required as a condition for admission; that unless the defendants are restrained from collecting this tuition and other fees, these two plaintiffs will be unable to attend, and would be deprived of the benefit of the free school system provided by this state.

A goodly portion of the complaint consists in allegations of alleged wrongful and arbitrary rules regarding place of residence as a condition for receiving National Youth Administration assistance; but we are not concerned with this feature, so far as the disposition of this case is concerned. Plaintiffs pray that the rules and regulations and orders of the defendants pertaining to the requirement that the plaintiffs pay tuition or any other moneys for their attendance be adjudged null and void, and that the plaintiff, Rose McIntyre, be reinstated in the National Youth Administration project, and be permitted to receive assistance therefrom during her attendance, and defendants be enjoined from collecting the fees.

We may concede that the evidence does not sustain part of these allegations, and we are not governed entirely by the prayer for relief.

The answer denies that the sums required to be paid are charged as tuition fees; alleges that the tuition is free, but that the institution has prescribed rules and regulations "requiring the payment of certain incidental fees for special services and advantages and materials and facilities furnished to the students;" that these fees "are required to provide for student activities such as athletics, assembly programs, college newspaper, choir membership, band membership, debate, student health, and for laboratory expense, the use of typewriters and pianos" and several other activities; and that the fees paid by the plaintiffs were of such character only, and not for tuition.

The answer further alleges that each of these fees charged represented the reasonable worth and value of the services, and that they had been prescribed in each case by and with the approval of the State Board vested with the control of the institution, and that the practice of charging such fees has been generally acquiesced in and approved by the executive officials and the legislative assemblies. The answer further alleges that there has been such a steady increase in the de-

mands of the students and the general public for advantages that were not comprehended when the institution was established, and that to meet such demands, and to supply the advantages, it has been necessary to fix additional incidental fees, and it is necessary to do so to maintain the services and accommodations. The answer further admits that these two plaintiffs "are, and since about the month of September, 1938, have been, students attending the State Normal School. . . ."

The answer then sets forth the rules and regulations regarding the National Youth Administration, but alleges the reason for requiring one of the plaintiffs to surrender her National Youth Administration employment and her appointment for the winter quarter, was her falling below the required scholastic standing and because of her failure to maintain the credit point average required.

It is true there is a general denial incidentally attached to the answer, but it is very clear that the issue was framed by the pleadings so as to bring squarely in issue the right of the defendants to charge certain fees as prerequisite to entrance to the institution—the claim of the plaintiffs being that they were for tuition in its broad sense; and the defendants, while admitting they were charged, set forth that they were incidental fees for special purposes. There is no question but what the defendants admitted they charged these extra fees and required the payment; that these two plaintiffs, the daughters of the other plaintiffs, were bona fide students at the institution, and that they were required to pay those fees. Because some arrangement was made between the parties with reference to what might be termed temporary settlement of the mere question of the amounts of the fees and how they would be paid, does not dispose of the real issue involved, the power of defendants to require the payment of these fees, and whether these fees charged were compulsory as prerequisite for entrance, or whether they were optional.

The case was tried to the district court on this theory. The learned trial court went into the determination of this matter exhaustively and made some forty-two findings of fact. Therein he sets forth the various fees charged, and their amounts, and the purposes for which they were charged; that the State Boards in control of this institution since the

school year of 1895 have prescribed the rules requiring the payment of these fees, including matriculation fees for the various terms, and shows the increase that was made from time to time. The court finds as a fact, and lays stress thereon, that this practice, charging matriculation, entrance, and registration fees, and incidental fees, was inaugurated in the State University, and was contemporaneous with the adoption of the Constitution, and traces the history of it; and that this practice prevailed at the Normal School at Valley City. It is clear from the findings that the court passed squarely upon the issues; and while it found against the plaintiffs, it is because of the findings and the judgment that the plaintiffs appeal.

The case was briefed in this court and argued in this court on the same principle. One can readily understand how all parties concerned, knowing these two plaintiffs were in fact bona fide students, and desirous of continuing their studies, and that the institution was charging these fees, and intended to continue the charge of these fees, entered into an understanding as to payments, and permitting plaintiffs to continue studies there until this matter would be determined. I am not saying that there was a specific agreement expressed in writing to this effect, but to my mind it stands out throughout the whole case. To require these girls to bring other proceedings to compel admission and await determination thereof would mean loss of valuable time during the period the girls should be in school.

What we are required to determine is whether all of the fees charged could be demanded before the student would be permitted to enter the institution; the power of defendants to charge these fees and compel payment thereof as a prerequisite. One could readily concede that defendants had the power to make certain charges for viewing athletic games, for the use of typewriters, pianos, lockers, towels, and for many of the other items set forth, and an issue would arise as to whether such payment was obligatory; or when the institution furnished them for the benefit of students, a student could be required to pay for them only if he used the benefits. In addition, we have the issue whether defendants may require certain matriculation fees, annual fees, etc., to be paid as a prerequisite to entrance in the normal school. Both issues involve the question of free schools.

I am not concerned with the conflict between the allegations and the proof regarding the N. Y. A. feature of the case. It may be well conceded that there is a failure of proof in regard to the charge and demand for payment of some of the fees set forth; but the broad issue is here, was so considered by the lower court and determined by the lower court; was presented here, and argued here. That the plaintiffs attended the school and were charged these fees is beyond dispute. It may not be very clear under what arrangements they paid them, but it is clear that when they were there, this matter was in dispute, because the check that they furnished, and had been marked, "Tuition," was refused because of the notation. I believe this court should determine the real issue involved.