[File No. 6928]

CONSOLIDATED FREIGHTWAYS, INC., a Corporation, Appellant, v. J. S. LAMB, Highway Commissioner, in and for the State of North Dakota, and All Members of the Highway Patrol of the State of North Dakota, Respondents.

(15 NW(2d) 74)

Opinion filed June 30, 1944.  Rehearing denied July 28, 1944

*Mr. J. K. Murray*, for the appellant.
*Mr. Geo. F. Shafer*, for the respondent.

CHRISTIANSON, J.   The plaintiff is engaged in transporting freight in interstate commerce through North Dakota.   It brought this action to enjoin the defendants from interfering with the transportation of certain freight in the vehicles which plaintiff employs in transporting the same.

At the commencement of the action plaintiff applied for and was granted a temporary injunction.   The defendants demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action and moved to dissolve the temporary injunction.   The trial court sustained the demurrer and ordered that the temporary injunction be dissolved.   The plaintiff has appealed.

·No question has been raised as to the propriety of the remedy.   Both parties are agreed that the rights of the parties are controlled by chapter 194, Laws 1941, which, so far as material here, reads:

"No vehicle, including the load thereon, shall exceed a length of thirty-five (35) feet.   No combination of vehicles including the load thereon, shall exceed a length of forty (40) feet.   No more than two

units shall be used in a combination. A tractor truck and semitrailer shall be considered as two units. *The provision hereof shall not apply to carriage of equipment of the Army or the defense forces of the United States Government* or the National Guard of the State of North Dakota; . . . ."

In its complaint the plaintiff alleges that it is engaged in transporting in interstate commerce certain freight through North Dakota; that in transporting such freight it utilizes a "two-unit truck, namely: a six wheel truck pulling a six wheel trailer, . . . . That the overall length of said truck does not exceed sixty feet and that the overall axle load does not exceed fifteen thousand pounds; that the overall length is more than forty-five feet; that the length of the front unit is twenty-two feet and the length of the rear unit is twenty-eight feet; that the weight does not exceed forty thousand pounds gross for each unit, and that the gross weight of each unit does not exceed thirty-five thousand pounds, making a minimum gross weight for the two units of seventy thousand pounds; that said weight of said two units is distributed evenly on six axles in two units and on twenty-two tires; five axles with twenty tires on dual wheels and one axle with two tires in the front end of the front unit."

It is further alleged "That the freight transported and carried in said trucks on said highways in interstate commerce as aforementioned, consists, exclusively, of equipment of the Army, the defense forces of the U. S. Government, and the National Guard of the State of North Dakota; that said transportation of said equipment by said trucks on said highway as aforementioned, consists of among other things, the transportation of said equipment and material from and to said military forces; the transportation of material from and to or between private parties which ultimately is used and intended to be used by said military forces, the transportation of material for the construction of plants, which manufacture products used and intended to be used by said military forces, the transportation of material for the construction of military installations, military cantonments, and all other military objects of every kind, nature or description, the transportation of material which is used or intended to be used directly or indirectly by the said military forces, the transportation of material

from and to and between private parties constructing military installations for said military forces, the transportation of material and equipment from and to parties and persons constructing military installations and structures for said military and defense forces or used or intended to be used for national defense, the transportation from and to and between private parties of materials used and intended to be used for national defense; the transportation of material to be used and intended to be used by private manufacturers producing equipment used or intended to be used for said military forces or said defense purposes, the transportation of material to be used in the construction of industrial plants, which plants are used or intended to be used in the production of material and military equipment for said military forces or national defenses."

The complaint further sets forth "a description of the type of freight carried and transported by said trucks, the name of the consignee, name of shipper, point of origin, destination, billing station, and route." The first shipment set out is one of aluminum rivets by the Midstate Manufacturing Company from Waupon, Wisconsin, to the Boeing Aircraft Company at Benton, Washington, to be used for military airplanes. The second shipment set out is one by the Koehring Mills from Milwaukee, Wisconsin, of tractor tread shoes and shoe pins to the Sound Construction and Engine Company at Galena, Washington, to be used in connection with the construction of an airport for the Army. Eleven other shipments are set out. These shipments consist of such items as electric motors, shoes, electric controllers, iron bolts and nuts, abrasive paper, and polishing wax.

In disposing of the case in the court below, the trial court filed a memorandum decision wherein he made the following pertinent observations:

"Much of the material hauled is such as is used in the Manufacture of War equipment. *In fact almost everything shipped now by Rail, truck or boat has some relation to the War effort. This would be true in the shipment of farm products.*

These shipments described in the Complaint are largely from one manufacturing Company to another and consists of parts for the construction of War activities.

*However, they are not shipments direct to or from the Army or Navy or Aviation Service of the United States Government or the National Guard of the State of North Dakota."*

It will be noted that the complaint shows affirmatively that the plaintiff employs vehicles of a size that it is forbidden to use for transporting freight unless the freight carried falls within the exception in the statute. It is the contention of the plaintiff that the proviso that "the provision hereof shall not apply to carriage of equipment of the Army or defense forces of the United States Government or the National Guard of the State of North Dakota" applies to whatever is used in equipping the Army or defense forces of the United States or the National Guard of the State and that consequently plaintiff had the right to utilize the vehicles that it was using in transporting the freight that is described in the complaint. The defendants, on the other hand, contend that the exception in the statute does not apply to material that may be or is intended to be used for military purposes; that it is restricted to equipment of the Army or defense forces of the United States or of the National Guard and that the freight described did not constitute equipment of the Army, the defense forces or of the National Guard.

The language of the exception is restrictive. It does not apply to the carriage of goods or material suitable for or to be used by the Army, Navy or aviation forces of the United States or the National Guard of the State. The exception is restricted to the "carriage of equipment of the Army or the defense forces of the United States Government or the National Guard of the State of North Dakota." In our opinion, the exception was intended to apply to and to cover exactly what it says, namely: the carriage of equipment of the Army, of the defense forces of the United States or of the National Guard of the State. The statute in question was enacted in March, 1941, some ten months before Pearl Harbor. The Selective Service Act (50 USCA Appx §§ 301 et seq, 11 FCA title 50, Appx 5) had been enacted sometime prior thereto. Military training camps had been and were being established. The 164th Infantry Regiment of the North Dakota National Guard had just been called into service, and the 188th Field Artillery of the North Dakota National Guard was about to be mobilized. It was

almost a certainty that it would be necessary to transport over the highways of this state equipment of the National Guard such as field artillery that could not be transported by vehicles of the size prescribed by the statute and that it might be necessary to transport similar heavy equipment of the armed forces of the United States and the exception was doubtless inserted to meet this situation.

The appellant contends that certain general allegations in the complaint that the freight consists exclusively of "equipment of the Army, defense forces of the United States and the National Guard"; that the service performed by the plaintiff "consists of the transportation of equipment from and to military forces", and other averments of similar general nature show that the freight transported falls within the statutory exception; that these averments are all admitted by the demurrer, and that consequently the complaint is not subject to demurrer on the ground that it fails to state facts sufficient to constitute a cause of action.

It is true a demurrer admits all the allegations in the pleading to which it is addressed which are issuable, relevant, and material, and which are well pleaded. But a demurrer does not admit conclusions of the pleader, except when they are supported by, and necessarily result from, the facts stated in the pleading. A demurrer does not admit mere expressions of opinion nor theories or arguments of the pleader as to the effect of the facts. 6 Standard Encyclopedia of Procedure, pp. 949–952; 49 C.J. pp. 438–440. Neither does a demurrer admit allegations which the pleading demurred to itself contradicts. 6 Standard Encyclopedia of Procedure, p. 953. The complaint here shows the specific kinds and types of material that is being transported, the names of the shippers, of the consignees, and other facts with reference to the shipments. The general conclusions stated must be subordinated to and construed in harmony with the specific allegations. The allegation that the shipment consisted of equipment of the Army or defense forces of the United States does not make rivets or abrasive paper belonging to some private concern equipment of the Army, even though it may ultimately become such equipment. The regulations of the Army define equipment as follows: "Equipment, as the term is used in these regulations, comprises the supplies issued individuals, units, or activities

for the performance of their specified functions. (Army Regulations No. 310–60, subparagraph J.)" See also, Vol. 3 of Century Dictionary and Cyclopedia; Funk & Wagnall's New Standard Dictionary.

The specific shipments set forth in the complaint for the purpose of showing that the freight carried by the plaintiff is within the exception of the statute, do not, in our opinion, show the carriage of equipment of the Army or defense forces of the United States, and such shipments do not fall within the exception of the statute.

The legislative assembly which convened in January, 1943, recognized the need for legislation to facilitate the transportation of persons and property needed for the prosecution of the war, and enacted chapter 181, Session Laws 1943, entitled:

"An Act to Facilitate the efficient transportation of persons and property needed for the effective prosecution of the war, to Authorize State co-operation with the officers and agencies of the United States in respect thereof, granting certain Emergency Powers to the Governor in relation thereto, . . . ."

This act authorizes the governor to suspend restrictive provisions of our laws relating to the transportation of persons and property on the highways of the State which may tend to interfere with the effective prosecution of the war.

Inasmuch as the shipments in question here are being carried by the plaintiff in vehicles which it is forbidden to use in carrying such shipments, it necessarily follows that the trial court was correct in sustaining defendants' demurrer and in dissolving the temporary injunction.

MORRIS, Ch. J., and BURR, NUESSLE and BURKE, JJ., concur.