J. J. McGURREN, both individually and on behalf of all others similarly situated, Plaintiff and Appellant,

v.

The CITY OF FARGO, a municipal corporation, Defendant and Respondent.

No. 7368.

Supreme Court of North Dakota.

Sept. 30, 1954.

J. F. X. Conmy, Fargo, for appellant.

Conmy & Conmy, Fargo, for respondent.

GRIMSON, Judge.

The plaintiff brings this action, both individually and on behalf of all others similarly situated, against the City of Fargo, a

municipal corporation, for an injunction to prevent the addition of fluoride compounds to the municipal water supply. In his amended complaint alleges that he is a resident, freeholder and taxpayer in the City of Fargo, a municipal corporation; that the defendant, City of Fargo, acting in a proprietary capacity, and for compensation, furnishes water to the residents of the city; that on the 8th day of April 1952, the defendant, acting through the city commission, passed a resolution directing the city manager to take necessary steps in the water department to provide for the addition of sodium-silico-fluoride compounds to the water supply of the City of Fargo, for the avowed purpose of preventing dental caries in young children; that prior thereto the defendant had procured and installed the mechanical equipment for injecting fluoride compounds into the municipal water supply and plaintiff alleges on information and belief that that was now being done from day to day.

Plaintiff further alleges that there is an implied contract between the defendant and the customers of said water department that the water furnished shall be "as reasonably pure and wholesome as possible;" that in reliance thereon plaintiff purchased property in the City of Fargo, procured water connections and is in all things conforming to the said implied contract on his part; that said fluoride is a toxic or poisonous substance and does not help in making the water pure or wholesome but on the contrary makes said water adulterated and dangerous to plaintiff's health causing him irreparable injury; that the amount of the charge by the city for water is necessarily increased by the expense involved in the operation and supervision of the machinery for the injection of the fluoride which expense was not in contemplation of the parties; that all this is in violation of the contractual rights of the plaintiff; that he receives no benefit therefrom as he is an adult; that in order to procure pure and wholesome water not adulterated with fluoride plaintiff would have to buy such water from other sources which would cause him, "continual inconvenience, vex-

ation, harassment, and expense," on account of this breach by defendant of his contract to furnish pure water; that the defendant has no right "either in governmental or a proprietary capacity to sell or dispense to the plaintiff and others similarly situated any medication or alleged therapeutic agent;" that this medication is contrary to the state Food and Drug law, Sec. 19-0201, NDRC 1943, in that mixing fluorides with water, alleged to be food, injuriously affects its quality and renders it injurious to health, and contrary to the state Pharmacy Law, Chap. 43-15, NDRC 1943, in that it dispenses a medical compound by others than a pharmacist or physician. Then he finally alleges that this is mass medication, unreasonable and arbitrary, exceeds the police power, does not conform to due process, violates plaintiff's inherent right to care for his own body and health and invades his right of freedom of religion, all contrary to the First and Fourteenth Amendments to the Constitution of the United States and to Article I, Sections 1, 4, 11 and 16 of the Constitution of North Dakota.

It is repeatedly alleged that these results of the fluoridation cause plaintiff and all those similarly situated irreparable injury and "that pecuniary compensation will not afford adequate relief and that restraint is necessary to prevent multiplicity of judicial proceedings" and prays that for those reasons he be granted an injunction to prevent fluoridation of the municipal water supply.

To this complaint the defendant demurred on the grounds, (1) that it did not state a cause of action; (2) that plaintiff has not legal capacity to sue; (3) that the court has no jurisdiction of the subject of the action; (4) that several causes of action have been improperly united. The district court sustained the demurrer. Plaintiff appeals from the order of the district court.

Since the case now is before us on the demurrer we must look to the complaint to see if the plaintiff has stated facts sufficient to entitle him to bring this action for an injunction.

For the purpose of testing the sufficiency of the complaint it is held that the demurrer admits the truth of all issuable, relevant, material facts well pleaded. Englund v. Townley, 43 N.D. 118, 122, 174 N.W. 755, 30 C.J.S., Equity, § 283, p. 719. Sec. 28–0741, NDRC 1943, provides: "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view of substantial justice between the parties." In McCurdy v. Hughes, 61 N.D. 235, 237 N.W. 748, 754, it is held that "this rule is applied where a complaint is attacked by a demurrer." In Olsness v. State, 58 N.D. 20, 224 N.W. 913, 914, this court states: "In considering the sufficiency of the allegations of the complaint we must, of course, give to the pleading the advantage of every intendment. See Northern Trust Co. v. First Nat. Bank, 25 N.D. 74, [at page] 79, 140 N.W. 705; Weber v. Lewis, 19 N.D. 473, 126 N.W. 105, 34 L.R.A.,N.S., 364." Lamoure v. Lasell, 26 N.D. 638, 647, 145 N.W. 577; Milwaukee Trust Co. v. Van Valkenburgh, 132 Wis. 638, 112 N.W. 1083.

A demurrer however, does not admit inferences and conclusions unless they appear clearly drawn from the facts alleged.

"Legal conclusions or inferences of fact which are not presumed or which may not be reasonably or necessarily inferred from the facts alleged are not admitted by the demurrer." Torgerson v. Minneapolis, St. P. & St. Marie R. R. Co., 49 N.D. 1096, 1102, 194 N.W. 741, 743; See also Tayloe v. City of Wahpeton, N.D., 62 N.W.2d 31, 38; Consolidated Freightways, Inc., v. Lamb, 73 N.D. 339, 15 N.W.2d 74; City of Fargo v. Sathre, 76 N.D. 341, 349, 350, 36 N.W.2d 39; McIntyre v. State Board of Higher Education, 71 N.D. 630, 3 N.W.2d 463; King v. Baker, 69 N.D. 581, 288 N.W. 565, 125 A.L.R. 730.

The complaint in the instant case is long, repetitious and rather indefinite. It is doubtful whether some of the conclusions can be inferred from the facts alleged. We must, however, construe it liberally and give it the advantage of every intendment to determine whether it states facts sufficient to fairly apprise the defendant of the nature of the claims made against it.

There are no allegations in the complaint to the effect that plaintiff's rights as a taxpayer are being violated. The City of Fargo operates the water supply system in a proprietary capacity. The mechanical equipment had been procured before the fluoridation was commenced. Charges are made against the consumers of the water for the cost and expense of operation. There is no allegation that public funds are being illegally expended. Under the complaint the fact that plaintiff is a taxpayer gives him no special rights in this action.

The plaintiff alleges "That an actual, or in all events, an implied contract exists obligating the defendant in the conduct of the municipal water plant to furnish water that is as reasonably pure, wholesome as possible." To support this conclusion he alleges that the defendant furnishes and sells water to the plaintiff and other residents of the City of Fargo in a proprietary capacity; that plaintiff has made the necessary service connections with the defendant's water main; that he is paying the charges made by defendant for the water and in all things conforming on his part to the alleged contract. These allegations seem to imply mutuality of obligations between the parties. It is alleged that the defendant is to furnish pure water and the plaintiff to pay therefor. That implies consideration on both sides.

It is true these allegations do not show that each party has the same remedies against the other. Mutuality, however, does not require that the parties have the same remedies against each other. 17 C.J.S., Contracts, § 100, p. 447.

"There are many contracts, originally unilateral, capable of enforcement when accepted. Many other contracts afford one party a remedy by an action

for the recovery of money, either upon a specific promise to pay, or in an action for damage, while the other party may be entitled to a specific performance; still others, where the remedy of one party before any performance might be very inadequate, which are yet, after full performance on one side, capable of specific enforcement against the other." Topeka Water Supply Co. v. Root, 56 Kan. 187, 197, 42 P. 715, 719.

■ There is nothing in the allegations to show the time during which this contract was to exist. The inference from the allegations is that the plaintiff could cease purchasing the water from the city at any time. That, however, does not destroy the mutuality of the contract.

"Where an offer is accepted, not by a promise, but for the performance of an act, it is mutual, although no time is stipulated during which performance is to be continued". 17 C.J.S., Contracts, § 100, p. 447. See also Rague v. New York Evening Journal Pub. Co., 164 App.Div. 126, 149 N.Y.S. 668.

Sec. 9–0601, NDRC 1943 provides: "An implied contract is one the existence and terms of which are manifested by conduct." As defined by the court in Armstrong v. Cleveland, 32 Tex.Civ.App. 482, 74 S.W. 789, an implied contract "is one which the law creates from the conduct and relations of the parties in the absence of an agreement by them."

We hold that construing the allegations of the complaint liberally they support the conclusion that an implied contract existed between the defendant and the plaintiff.

■■ Plaintiff then alleges in his complaint that the defendant has breached this implied contract by the addition of fluoride compounds to the water supply which he says adulterates the water and makes it dangerous to plaintiff's health. Whether the complaint alleges sufficient facts upon which to base that conclusion is a close and serious question. He does allege that under the implied contract the defendant has to furnish water that is "as reasonably pure and wholesome as possible." That means that the defendant must furnish water free from any "contamination rendering the water unfit for domestic use and unsafe and dangerous to individuals." 56 Am.Jur., Waterworks, Sec. 75, p. 76, and Sec. 79, p. 983. See also Annotation 61 L.R.A. 88. The complaint then alleges that the fluoride compounds are poisonous. It does not state in what proportion to the amount of water the fluorides are injected. It is, however, common knowledge that poisons when taken in sufficient quantities do cause serious injury. It follows that the intent of the allegation is that the mixture of the fluorides with the water was in sufficient amounts to cause serious injury. It must be held, therefore, that giving the allegations in the complaint their full intendment, they form a basis from which the conclusion can be drawn that the plaintiff will suffer irreparable injury from the acts of the defendant in mixing fluoride compounds with the drinking water. The allegations of the complaint when given every intendment fairly apprise the defendant of the claim made against defendant in regards to the irreparable damage.

■ The violation of a contract, even if such violation causes the injured party irreparable damage, does not, however, entitle him to an injunction if he has any adequate remedy at law. But a legal remedy in order to be adequate in the sense involved in determining the jurisdiction of equity must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity. Bourke v. Olcott Water Co., 84 Vt. 121, 78 A. 715, 33 L.R.A.,N.S., 1015.

It is claimed in the complaint that the injuries and expense caused by fluoridation are continuous; will cause· a multiplicity of lawsuits and that there is no adequate remedy at law.

Clearly any injuries caused by fluoridation would continue as long as fluoridation is permitted. No one action at law could determine the damages sustained by the injured party. The injuries and expense up to the bringing of an action for damages could perhaps be estimated and injured par-

ty duly recompensed to that extent. However, the future damages caused by the continued use of fluoridation would necessitate the bringing of future actions. This would continue as long as the fluoridation would continue.

In Bartles Northern Oil Co. v. Jackman, 29 N.D. 236, 150 N.W. 576, this court said:

"Although a legal remedy may be adequate for any single act of trespass or any single wrong, yet when such acts or wrongs are continuous in their nature and the entire wrong may be prevented by injunction, that form of proceeding is preferable to one at law, because full compensation for the entire wrong cannot be obtained in one action at law."

In Viestenz v. Arthur Township, 78 N.D. 1029, 1030, 54 N.W.2d 572, 573, this court held:

"As a general rule where an injury, committed by one against another is continuous or is being constantly repeated, so that the complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction." 28 Am.Jur., Injunctions, Sec. 48, p. 243.

▉ Plaintiff claims that the defendant's breach of contract consists of furnishing contaminated and adulterated water dangerous to the health of plaintiff and others similarly situated. Thus the breach becomes a matter endangering the health of the community.

"Acts which are a menace to the public health or safety, or, as sometimes stated in greater detail, acts which are dangerous to human life, detrimental to public health, and the occasion of great public inconvenience and damage, may be enjoined." 43 C.J.S., Injunctions, § 124, p. 671.

▉ The allegations of the complaint liberally construed show that there is an implied contract between the defendant and the plaintiff to furnish pure water;

that the defendant has breached that contract by mixing fluorides, alleged to be poisonous, with the water; that the plaintiff and others similarly situated suffer irreparable damage therefrom; that there is no adequate remedy at law and that a multiplicity of actions will result. These allegations are sufficient to constitute a cause of action, and to entitle the plaintiff to an injunction if proven.

▉ Clearly defendant's other grounds of demurrer that the plaintiff has not legal capacity to sue, that the court has no jurisdiction, and that several causes of action have been improperly united, are untenable.

"Public authorities and water consumers as well are proper parties to an action for a restraining injunction against the use or furnishing of impure water." 56 Am.Jur., Waterworks, Sec. 77, p. 982.

"Courts of equity are very often called upon to grant injunctive relief to protect contractual rights of parties to a supply of electricity, gas, water, etc. In some instances the relief is sought by individual consumers, * * *" 28 Am.Jur., Injunctions, Sec. 87, p. 280.

"No misjoinder occurs, however, where the matters united in the bill for injunction are but the specifications of the elements of the right of suit and of the equity which the complainant has, where, in other words, they are but the enumeration of the elements of the asserted aggression or wrong upon the complainant and in emphasis of it." 128 Am.Jur., Injunctions, Sec. 288, p. 462.

We have concluded that the demurrer must be overruled and the defendant allowed to answer.

The order of the district court sustaining the demurrer is reversed.

MORRIS, C. J., and BURKE and SATHRE, JJ., concur.

JOHNSON, J., did not participate.