I «CANNELLA, Judge.
Plaintiff, Occidental Chemical Corporation (Occidental), appeals from the district court judgment reversing the ruling of the Louisiana Board of Tax Appeals which had ordered a refund to Occidental of sales and use taxes it had previously paid. For the reasons which follow, we affirm.
The primary question involved in this tax case, condensed to its simplest form, is whether Occidental should pay taxes on sums it expended over a nine year period, pursuant to a contract with Electrode Corporation (Electrode), whereby Occidental acquired patent rights to an anode coating process and immunity and indemnity from suit for using the coated anodes. The details giving rise to the instant tax dispute are as follows.
In 1970, Electrode was the holder of patents relating to the coating process used in creating Dimensionally Stable Anodes (DSA), which are used in the ^manufacture of chlorine. The anodes, made out of titanium approximately two feet by eighteen inches, are placed in an electrolytic cell along with from seventy five to ninety other anodes. Although they have an almost indefinite life, titanium is not a very good conductor of electricity. Therefore, a special coating is applied to increase the ability of the anode structures to conduct electricity. The technology relating to that coating was the process that Electrode controlled through its patents. The Electrode DSA patents expired in 1992. At issue in this case are the taxes paid to the State by Occidental on the fees which Occidental paid to Electrode from 1985 through 1992 involving Electrode’s DSA patent rights.
Going back to 1970, Occidental’s predecessor, Hooker Chemical Corporation (Hooker) [1] was in the business of manufacturing chlorine. On August 27, 1970, Hooker entered into a lease agreement with Electrode for the lease of the DSA and the patent rights which were used in its manufacture of chlorine. Five years later, on December 26, 1975, Electrode entered into an “Option Agreement” with Hooker which granted Hooker the right to purchase the DSA. On that same date, Electrode entered into an “Immunity Agreement” with a wholly owned subsid *399 iary of Hooker, Anode Products, Inc. (API), which granted API the patent rights for the DSA, as well as immunity and indemnity rights. The “Option Agreement” expressly referenced this “Immunity Agreement” providing that if Hooker exercised its option to purchase the DSA, then Electrode would be required to execute an immunity agreement in favor of Hooker concerning the. patent use of the DSA.
On December 31, 1975, Hooker purchased the DSA from Electrode for ^approximately $2.4 million and the Anode Lease Agreement was canceled. The following day, on January 1, 1976, Hooker entered into an agreement with API and agreed to pay API for the patent rights on the DSA. These payments continued through 1983.
In 1983, following a settlement in other major litigation involving patent rights in a suit entitled Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp., 79 Civ. 714 (W.D.NY.)[2], API terminated its agreement with Electrode and several new agreements between Hooker (now known as Occidental) and Electrode were executed. The effect of these agreements was to take API out as the middleman between Occidental and Electrode. Occidental was granted patent rights directly from Electrode and would now pay to Electrode, rather than API, the same fees per ton of chlorine produced that it had paid to API. Occidental made these payments to Electrode until December 31, 1992 when the patents expired.
Between December 15,1983 and December 31, 1992, Occidental paid taxes in the amount of $309,625.27 on the fees which it had paid to Electrode for the use of the patents, immunity and indemnity from suit for patent infringement. It is for these taxes which Occidental seeks a refund.
On August 18, 1992, Occidental filed a claim with the Department of Revenue and Taxation (Department) seeking a refund of taxes it had paid on the fees paid to Electrode. The Department denied Occidental’s refund claim. Occidental timely appealed to the Louisiana Board of Tax Appeals (the Board). Following a hearing on February 3, 1998, the Board ruled in favor of Occidental concluding that the refund was due. The Department filed a Petition for Judicial |fiReview of a Decision of the Board which, pursuant to La. R.S. 47:1434, is in the nature of an appeal. Following the lodging of the record, briefing and argument, the district court rendered judgment in favor of the Department on July 12, 1999, reversing the ruling of the Board and finding that the taxes were owed. It is from this judgment that Occidental appeals.
On appeal Occidental argues that the district court erred in reversing the Board decision which had concluded that the taxes should be refunded. Occidental argues that the fees in question, paid to Electrode, were for intangible items, which according to law are not taxable. The district court found that the intangible component was so closely related to the tangible component that taxes were due.
The Department argues that this case is controlled by McNamara v. Electrode Corporation, 418 So.2d 652 ( La.App. 1st Cir.1982), writs denied, 420 So.2d 986 (La.1982), which held that the fees paid for patent rights along with a lease for DSA were taxable.
In McNamara v. Electrode, supra, the court was confronted with the question of whether the fees paid under a “Technology and Patent License Agreement,” for the patent rights on DSA which were leased under a separate agreement, were paid for intangible items and thus not taxable. The patent agreement was entered into at *400 the same time as the “Anode Lease Agreement”, but in separate documents. In holding that the fees paid for the patent rights were taxable, the court held:
The substance of a contract, not the wording of it, nor the splitting or dividing it up by the contracting parties, is controlling. The taxpayer cannot defeat the Department’s collection of taxes by either the wording, form, or label of a contract. Saenger Realty Corporation v. Grosjean, 194 La. 470, 193 So. 710 (1940).
[[Image here]]
The split contracts (Technology and Patent License Agreemenb-Anode Lease Agreement) are in essence the same agreements but spelled out in different contracts and different words. The true object of these contracts, whether labeled “Technology and Patent License Agreement” or “Anode Lease Agreement”, were the anodes. Without the anodes, the technology, know-how, etc. would have been of no use to Louisiana industries. The statutes and jurisprudence do not allow the separation of gross proceeds from, a lease into nontaxable part attributable to royalty or a part deemed service.
[[Image here]]
In the instant case, any know-how or technology is certainly inseparable from the hardware (anodes). The anodes simply cannot be leased without the accompanying technology and know-how and are not even transferred to the lessee until various secrecy and other lease agreements have been signed. The alleged technology or know-how is an inseparable part of the hardware (anode) and for that reason must be included as part of the total price of the lease of anodes. No breakdown between “intangible technology” and “tangible personal property” is allowable in the instant case. (Emphasis added.)
We find McNamara v. Electrode well reasoned and agree with its holding. As applied to this case, then, the question becomes whether the fact that the DSA in this case were sold to Occidental, rather than leased, requires a different result, that is whether the patent agreement entered into between Occidental and Electrode was so attenuated from the sale that a different result should obtain. We find the distinguishing facts between the two cases to be essentially a distinction without a difference.
When the different facts of this case, with the multiple agreements and subsidiary corporations, are reduced to their most fundamental components, we. are faced with essentially the same question as was presented in McNamara v. Electrode, that is, whether the fees paid by Occidental to Electrode to use the DSA purchased by Occidental from Electrode are taxable.
The Louisiana sales and use tax statutes impose a tax upon transactions involving tangible personal property. La. R.S. 47:302 & 47:331. It has been held |7that the legislature, in enacting the sales and use tax, has also authorized the taxing of intangible rights where they are so closely connected to the items of tangible personal property that one is useless without the other. McNamara v. Electrode, supra. As found by the trial court and previously held by the First Circuit Court of Appeal, with writs denied by the Louisiana Supreme Court, the items involved herein, the DSA and the right to use them in connection with the patent agreement, present just such a case.
Occidental argues that the trial court used the wrong standard of review in reaching its decision because review by the district court in the context of this case was restricted to the record. Occidental argues that the district court erred in substituting its own factual findings for those of the Board.
We find no support in the record for this argument. The district court judgment *401 was primarily a legal conclusion rather than a factual one. The Board made no written or oral factual findings, therefore, it is impossible to say that the district court substituted its factual findings for those of the Board. Referring to and relying on the McNamara v. Electrode case is not going beyond the record before it or substituting its factual findings for the findings of the Board. There was testimony in the record that the DSA and the patent rights to use them are inseparable. James Guidry, a CPA who testified for the Department, stated that one would not buy the anodes without also obtaining the patent rights to use them. Moreover, the series of transactions, beginning back in 1970, indicate that obtaining the patent rights was always a prerequisite to Occidental’s lease or purchase of the anodes and was included as a condition in the agreement to purchase the anodes. We find no -merit to Occidental’s argument that the district court used the wrong standard of review.
IsNext, Occidental argues that the district court erred in ruling that the Board relied on the wording, form or label of the contracts rather their the substance in allowing Occidental to avoid payment of the taxes. Occidental argues that the fact that the purchase of the DSA was in 1975 and Occidental’s agreement with Electrode as to the patent rights was not until 1983, is a matter of substance that negates their obligation to pay taxes on the sums paid under the 1983 agreement.
Initially, Occidental’s argument on this point caught our attention. However, upon more thorough inspection, it is not persuasive. Occidental always had the patent rights to the DSA. Beginning in 1970, although Occidental was leasing the DSA from Electrode at that time, the parties had also entered into a patent agreement, which gave Occidental the right to use the patent technology. Then, between 1975 and 1983, Occidental’s acquisition of the patent rights was once removed from Electrode by passing them first through API, an Occidental subsidiary, and then on to Occidental. But, as noted above, the agreement to purchase was conditioned on Occidental’s ability to acquire the patent rights. From the outset, it was contemplated between Occidental and Electrode that the patent rights were an essential part of the lease and purchase of the DSA.
Thus, the issue before us, as it was before the district court, is whether these two documents, separated as they were, by time, subsidiary companies and intervening contracts, effects the conclusion of McNamara v. Electrode that the intangible patent rights to the DSA are such an integral part of the tangible property that they are likewise taxable under Louisiana law. We find no error in the conclusion of the district court. As stated above, we find that the essence of the two agreements is the sale of the DSA with the interconnected right to use 19them.[3]
Accordingly, we find no error in the district court judgment, holding that Occidental is not due a refund for the sales and use taxes which it paid on the sums paid to Electrode for the patent rights to the DSA which it separately purchased, and affirm *402 that judgment. Costs of appeal are assessed to Occidental.
AFFIRMED.

. Hooker was also known as Hooker Chemicals & Plastics Corporation before being changed to Occidental.

. Electrode was a wholly owned subsidiary of Eltech, which was the successor in interest to Diamond Shamrock Corporation.

. Occidental argues herein that the facts of this case are distinguishable from the facts in McNamara v. Electrode because the Department did not introduce evidence to refute Occidental’s evidence that the fair market value of the DSA which it purchased was the $2.4 million it paid. Thus, they argue that they proved that the patent rights are a separate and distinct intangible item which is not taxable. Occidental makes a similar argument regarding the evidence of its ability to use the anodes without the patent rights by scraping the coating off and recovering the anodes with a different, less effective coating or by shipping the DSA to another country that does not recognize patent rights. We simply find these arguments unpersuasiye. There is ample evidence in the record, although perhaps not specific on each point raised by Occidental, from which to find that DSA is not leased or purchased without the concomitant right to the patent technology to use the product as designed. The McNamara v. Electrode case is applicable to this case.