2002 ND 98

**STATE of North Dakota, By and Through its Tax Commissioner, Rick CLAYBURGH, Appellee.**

v.

**AMERICAN WEST COMMUNITY PROMOTIONS, INC., Appellant.**

No. 20010223.

Supreme Court of North Dakota.

June 4, 2002.

VandeWalle, C.J., filed a concurring opinion.

Sandstrom, J., filed a dissenting opinion.

Stacey C. Tronson (argued), the Tax Law Office, PLLP, Fargo, ND, for appellant.

Daniel Lucian Rouse (argued) and Robert W. Wirtz (appeared), Special Assistant Attorneys General, and Wayne K. Stenehjem (on brief), Attorney General, Bismarck, ND, for appellee.

MARING, Justice.

[¶ 1] American West Community Promotions, Inc. appeals from a district court judgment affirming an order of the North Dakota State Tax Commissioner which held American West liable for $20,883.51 in sales tax. We reverse the decision of the district court and remand to the Tax Commissioner for further proceedings consistent with this opinion.

## I

[¶ 2] American West Community Promotions, Inc. ("American West") is an advertising and marketing firm that represents approximately 400 retail, food, and service merchants in North Dakota. American West produces promotional coupon books on behalf of its clients and markets the books in various ways, including radio ads, newspaper ads, direct mail, and through a promotional telephone campaign. The books sell for $43.95 each and contain coupons entitling the coupon holders to a variety of discounts and free products and services from participating merchants. In September of 1999, the State, by and through its Tax Commissioner ("Commissioner"), conducted a sales and use tax audit of American West. As a result of the audit, the Commissioner concluded American West had made taxable sales of its coupon books in North Dakota, but failed to pay sales tax. American West challenged this conclusion and requested an administrative hearing.

[¶ 3] At the administrative hearing, American West argued its coupon books are not tangible personal property and, thus, not subject to sales tax under N.D.C.C. § 57–39.2–02.1. Furthermore, American West argued the Commissioner exceeded statutory authority in promulgating N.D. Admin. Code § 81–04.1–01–28, which provides that sales of coupon books are taxable as sales of tangible personal property.

[¶ 4] The Administrative Law Judge ("ALJ") rejected American West's argument and concluded it was liable for $20,883.51 in sales tax to the state of North Dakota. The Commissioner issued an order adopting the ALJ's recommended findings of fact and conclusions of law on February 1, 2001. American West appealed the Commissioner's order to the district court on February 28, 2001. On July 13, 2001, the district court issued a judgment which affirmed the Commissioner's order, and American West appealed to this Court.

## II

[¶ 5] Our review of a decision by an administrative agency is governed by N.D.C.C. § 28–32–19. *See Ringsaker v. Director, N.D. Dept. of Transp.,* 1999 ND 127, ¶ 5, 596 N.W.2d 328. We limit our review to the record before the administrative agency, and we do not review the decision of the district court. *See id.* Section 28–32–19, N.D.C.C., requires us to affirm the agency's decision unless:

1) a preponderance of the evidence does not support the agency's findings; 2) the agency's findings of fact do not support its conclusions of law and its decision; 3) the agency's decision violates the constitutional rights of the appellant; 4) the agency did not comply with the Administrative Agencies Practice Act in its proceedings; 5) the agency's rules or procedures have not afforded the appellant a fair hearing; or 6) the agency's decision is not in accordance with the law.

*Dworshak v. Moore,* 1998 ND 172, ¶ 6, 583 N.W.2d 799 (quoting *Greenwood v. Moore,* 545 N.W.2d 790, 793 (N.D.1996)).[1]

---

1. We note N.D.C.C. § 28–32–46 adds additional grounds for not affirming an adminis-

### III

[¶ 6] American West argues the Commissioner erred in concluding it was liable for sales tax because when it sells a coupon book it is not selling tangible personal property, but the intangible right to receive discounts from its clients. The Commissioner responds that the issue in this case is not whether the coupon books are tangible or intangible property, but whether the Commissioner's act in promulgating N.D. Admin. Code § 81–04.1–01–28 was beyond the scope of the Commissioner's statutory authority.

[¶ 7] The issue of whether the Commissioner correctly interpreted a statute is a question of law which is fully reviewable by this Court on appeal. *See Northern X–Ray Co., Inc. v. State ex rel. Hanson,* 542 N.W.2d 733, 735 (N.D.1996).[2] The Commissioner's interpretation of a statute is entitled to some deference if it does not contradict clear and unambiguous statutory language. *See Consol. Tel. v. Western Wireless Corp.,* 2001 ND 209, ¶ 7, 637 N.W.2d 699; *Rocky Mountain Oil & Gas Ass'n v. Conrad,* 405 N.W.2d 279, 283 (N.D.1987). When the statute at issue is complex and technical in nature, this deference is appreciable, and we will be reluctant to substitute our interpretation for the Commissioner's interpretation. *See Consol. Tel.,* at ¶ 7; *NL Indust., Inc. v. N.D. State Tax Comm'r,* 498 N.W.2d 141, 146 (N.D.1993). However, an administrative agency's construction of a statute is accorded much less weight when the only issue to be resolved by a court is a nontechnical question of law. *See* 2B Norman J. Singer, *Statutes and Statutory Construction* § 49:04, 24 (6th ed. 2000 Rev.); *see also Kansas Power and Light Co. v. State Corp. Commission,* 237 Kan. 394, 699 P.2d 53, 56 (1985) (stating that deference to administrative agency interpretations is not required where the issue "is not tech-

---

trative agency decision, effective August 1, 2001. American West filed its appeal from the Commissioner's decision on March 1, 2001. Therefore, former N.D.C.C. § 29–32–19 applies.

2. The dissent asserts our reliance on *Northern X–Ray* "oversimplifies" the analysis in this case because it contends *Northern X–Ray* did not involve either legislative acquiescence to an administrative rule or deference to a longstanding administrative agency interpretation of a statute. Contrary to the dissent's assertion, *Northern X–Ray* contained the following discussion concerning the deference to be given to an agency's interpretation of a statute as evidenced in an administrative rule:

> Our conclusion is at odds with that of the Commissioner, who argues, in effect, that anyone who enters a contract to install tangible personal property into real estate is a contractor under section 57–40.2–03.3. *The Commissioner asks us to defer to the agency's interpretation of "contractor," and points to section 81–04.1–04.20, NDAC, which says "[a] contractor or subcontractor installing materials into real property locat-*

> *ed in North Dakota must pay sales or use tax on those materials regardless of who owns them."* This regulation, however, presents the same problems as the statute: ambiguous use of the term "contractor." We give some weight to the "practical construction of a statute by the agency administering it" and we also give weight "to the long-continued, practical construction placed on statutes by the officers charged with the duty of applying them." The record before us shows no unambiguous nor "long-continued" interpretation. *Moreover, we will not defer to even a long-standing agency interpretation that. is contrary to the intent of the legislature. Therefore, we will not defer unreservedly to the agency interpretation of "contractor."*

See *Northern X–Ray,* at 738 (citations omitted) (emphasis added). It was after the Court determined that it would not defer "unreservedly" to N.D. Admin. Code § 81–04.1–04.20 that it then addressed the issue of whether Northern X–Ray was a "contractor" within the meaning of the statute. *See id.* ("The question remaining is whether Northern is a contractor under the definition provided in section 43–07–01(3).").

nical, but statutory construction of a question of law"); *Matter of Dworman v. N.Y. State Div. of Housing & Community Renewal,* 94 N.Y.2d 359, 704 N.Y.S.2d 192, 725 N.E.2d 613, 619 (1999) ("[W]here, as here, the question is one of pure statutory interpretation dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight." (citation omitted) (internal quotation marks omitted)).

■ [¶ 8] The issue in this case is whether the Commissioner correctly interpreted the phrase "[t]angible personal property, consisting of goods, wares, or merchandise." *See* N.D.C.C. § 57–39.2–02.1(1)(a). The interpretation of this phrase is a matter of pure statutory interpretation and presents a nontechnical question of law. *See Northern X–Ray Co.,* 542 N.W.2d at 738 (rejecting the Commissioner's interpretation of the word "contractor"). Thus, the issue in this case does not involve such complex and technical matters as to warrant an appreciable level of deference to the Commissioner's interpretation. *See, e.g., Kinney Shoe Corp. v. State ex rel. Hanson,* 552 N.W.2d 788, 790 (N.D.1996) (Commissioner's conclusion that inter-company transfers which reduce federal tax liability are not part of a subsidiary's state tax deduction was entitled to appreciable deference); *NL Indust., Inc.,* 498 N.W.2d at 146–47 (Commissioner's method for treating net operating losses of a multi-state corporation was entitled to appreciable deference); *Western Gas Resources, Inc. v. Heitkamp,* 489 N.W.2d 869, 872 (N.D.1992) (Commissioner's determination that field condensate recovered from natural gas was oil within the meaning of the oil extraction tax was entitled to appreciable deference).

■ [¶ 9] An administrative agency's interpretation of a statute is also entitled to additional weight if the Legislature reenacts the statute after a contemporaneous and continuous construction of the statute by an administrative agency. *See Schmutzler v. Workmen's Comp. Bureau,* 78 N.D. 377, 49 N.W.2d 649, 652 (1951); *Payne v. Bd. of Trustees of the Teachers' Ins. & Ret. Fund,* 76 N.D. 278, 35 N.W.2d 553, 557–58 (1948). In *Payne,* this Court discussed the deference that should be given to an agency's contemporaneous and continuous interpretation of a statute when the Legislature reenacts the statute subsequent to the interpretation:

> It is not disputed that [the agency's interpretation] has been the administrative practice since the adoption of the law. During that time the legislature has met in many sessions and made several amendments to the law but none in regard to this procedure. There is at least a strong presumption that the legislature knew and approved the contemporaneous and practical construction placed upon the [statute] by the officers charged with its administration.
>
> . . . .
>
> "Executive construction is entitled to additional weight where it has been impliedly indorsed by the legislature, as by the reenactment of the statute or the passage of a similar one, in the same or substantially the same terms, . . . ."

*See Payne,* at 557–58. Similarly, in *Schmutzler,* this Court stated:

> Following the codification and the enactment of [the statute], and its reenactment . . . the Workmen's Compensation Bureau continued the interpretation of this Act in accordance with the limitations set out in Chapter 260, S.L.1929. The Bureau treated the statute as unchanged. The practical and contemporaneous construction placed upon the

statute by the officers charged with its enforcement may be considered in determining the meaning of the law.

*Schmutzler,* at 652.

[¶ 10] The Legislature has reenacted N.D.C.C. § 57–39.2–02.1 four times since the Commissioner amended N.D. Admin. Code § 81–04.1–01–28 in 1989 to provide for the taxation of sales of coupon books as sales of tangible personal property. However, the 1989 amendments to N.D. Admin. Code § 81–04.1–01–28 were promulgated 54 years after the Legislature first applied the sales tax to sales of "[t]angible personal property, consisting of goods, wares, or merchandise." *See* 1935 N.D. Sess. Laws ch. 276, § 2 (applying the sales tax to sales of "tangible personal property, consisting of goods, wares, or merchandise,"). Thus, unlike the administrative interpretations at issue in *Payne* and *Schmutzler,* we are not concerned with a contemporaneous construction of a statute. *See Payne,* 35 N.W.2d at 557 ("It is not disputed that [the agency's interpretation] has been the administrative practice since the adoption of the law."); *Schmutzler,* 49 N.W.2d at 652 ("Following the codification and the enactment of [the statute], and its reenactment ... the Workmen's Compensation Bureau continued the interpretation of this Act in accordance with the limitations set out in Chapter 260, S.L.1929."); *see also* Singer, *supra* § 49:08, 101 ("A contemporaneous interpretation is one made at or soon after the time of enactment."). Nor are we concerned with a continuous agency interpretation in this case because between the years 1984 and 1989, there was no administrative rule providing for the taxation of sales of coupon books, and prior to 1984, sales of coupon books were taxed only when such books were "sold by persons engaged in selling taxable commodities or services." *See* N.D. Admin. Code § 81–04–02–71.2 (repealed June 1, 1984); *see also* N.D. Admin. Code § 81–04.1–01–28 (Oct. 1986). Thus, the rule established in *Payne* and *Schmutzler* is afforded much less weight in this case. *See* Singer, *supra* § 49:08, 103 ("[T]he rules that an administrative interpretation of an act is entitled to controlling weight may not be invoked where the interpretation was neither continuous nor contemporaneous with the enactment of the statute."); *see also* Singer, *supra* § 49:04, 24 (listing proximity in time to the enactment of the statute as a factor bearing on the conclusiveness of the agency's interpretation of the statute).

[¶ 11] The reenactment doctrine is also afforded less weight in this case because there is nothing in the legislative history of N.D.C.C. § 57–39.2–02.1 [3] or in the record

---

3. There are documents that show the Commissioner provided the interim Administrative Rules Committee a memorandum which contained the text of forty different administrative rules at a July 11, 1989, meeting of that committee. *See Minutes of Administrative Rules Comm.* appendix K (July 11, 1989); *Memorandum of State Tax Commissioner* dated July 11, 1989. The 1989 version of N.D. Admin. Code § 81–04.1–01–28 was one of the forty rules in this memorandum, and the Administrative Rules Committee did not object to the adoption of it or any of the other thirty-nine rules listed in the memorandum. *See Minutes of Administrative Rules Comm.* 8 (July 11, 1989); *Memorandum of State Tax Commissioner* dated July 11, 1989. However, the fact that the eleven members of the Administrative Rules Committee present at the July 11, 1989, meeting did not object to the 1989 amendments to N.D. Admin. Code § 81–04.1–01–28 is not evidence that the Legislative Assembly as a whole approved of the amendments. *See Eklund v. Eklund,* 538 N.W.2d 182, 187–188 (N.D.1995) (noting that the Administrative Rules Committee supported the "income shares" model for setting child support while the Legislative Assembly rejected the use of the "income shares" model). Furthermore, this fact is certainly not evidence of what the Legislative Assembly intended when it first applied the sales tax to

before this Court to indicate the Legislature considered the 1989 amendments to N.D. Admin. Code § 81–04.1–01–28 during any of the reenactments of N.D.C.C. § 57–39.2–02.1. *See* Singer, *supra* § 49:09, 109–10 ("[The reenactment doctrine] does not apply where nothing indicates that the legislature had its attention directed to the administrative interpretation upon reenactment. Where there is no indication of the extent to which the practical construction was followed, the rule has questionable value.") (footnotes omitted).[4]

 [¶ 12] Nonetheless, we have held, through the doctrine of legislative acquiescence, that even inaction on the part of the Legislature subsequent to an agency interpretation of a statute entitles the agency's interpretation to additional weight. *See Eklund v. Eklund,* 538 N.W.2d 182, 188 (N.D.1995) (legislature is presumed to know the construction of its statutes and acquiesces in that construction if it fails to offer any amendments); *Capital Electric Coop., Inc. v. Public Service Comm'n,* 534 N.W.2d 587, 592 (N.D. 1995) (same); *Effertz v. N.D. Workers Comp. Bureau,* 525 N.W.2d 691, 693 (N.D. 1994); *Northern States Power Co. v. Board of R.R. Comm'rs,* 71 N.D. 1, 298 N.W. 423, 430 (1941) ("And 'in construing a statute of doubtful meaning the court will give weight to the long-continued practical construction placed thereon by officers charged with the duty of executing and applying the statute,' to the judicial construction of such statute by an inferior court, and to the legislative acquiescence in both the departmental and judicial construction." (citations omitted)). Nevertheless, the reenactment doctrine and legislative acquiescence are merely aids in statutory interpretation and can be overridden by more compelling considerations. *See Northern X–Ray,* 542 N.W.2d

sales of "[t]angible personal property, consisting of goods, wares, or merchandise," in 1935. *See* 1935 N.D. Sess. Laws ch. 276, § 2 (applying the sales tax to sales of "tangible personal property, consisting of goods, wares, or merchandise,").

4. Numerous courts require evidence of express legislative approval of an agency interpretation before they will attribute significant weight to the reeanctment doctrine. *See United States v. Bd. of Commissioners,* 435 U.S. 110, 135, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978) (stating that "it is impermissible to draw inferences of approval from the unexplained inaction of Congress," but Congress is presumed to have ratified an agency's interpretation where "the legislative history of the re-enactment showed that Congress agreed with that interpretation"); *ABC Rentals v. Commissioner,* 142 F.3d 1200, 1205 (10th Cir.1998) ("[R]eenactment without change in relevant statutory language and mere Congressional inaction are at best unreliable indications of Congressional intent to adopt an administrative construction of a statute. The inference of Congressional approval is stronger when legislative history contains some indication that Congress was aware of and approved the administrative construction." (citation omitted)); *Isaacs v. Bowen,* 865 F.2d 468, 473 (2d Cir.1989) ("Mere reenactment is insufficient. It must also appear that Congress expressed approval of the agency interpretation."); *AFL–CIO v. Brock,* 835 F.2d 912, 915 (D.C.Cir.1987) ("This court has also consistently required express congressional approval of an administrative interpretation if it is to be viewed as statutorily mandated."); *J.R. Simplot Co. v. State Tax Commission,* 120 Idaho 849, 820 P.2d 1206, 1221 (1991) ("[W]e require 'something more' to determine *actual* legislative intent than merely reenacting the statute after it has received an agency construction." (emphasis in original)); *GE Solid State, Inc. v. Director, Division of Tax.,* 132 N.J. 298, 625 A.2d 468, 475 (1993) ("Where the regulation is inconsistent with the ordinary and primary meaning of the statutory language, it should be disregarded, despite the subsequent reenactment of the statute, at least in the absence of a *clear showing* that the Legislature specifically considered the regulation and approved it in re-enacting the provision." (emphasis in original)).

at 738 ("[W]e will not defer to even a long-standing agency interpretation that is contrary to the intent of the legislature."); *Payne*, 35 N.W.2d at 558 ("Executive construction is entitled to *additional weight* where it has been impliedly indorsed by the legislature, as by the reenactment of the statute or the passage of a similar one, in the same or substantially the same terms, . . . ." (emphasis added)); *Schmutzler*, 49 N.W.2d at 652 ("The practical and contemporaneous construction placed upon the statute by the officers charged with its enforcement *may be considered* in determining the meaning of the law." (emphasis added)); Singer, *supra* § 49:07, 99 (stating that an agency's long-standing interpretation can be overridden by more compelling considerations).

◼◼◼◼ [¶ 13] Having addressed the weight afforded to the Commissioner's interpretation of N.D.C.C. § 57–39.2–02.1(1), we now turn to the statute itself. Section 57–39.2–02.1(1), N.D.C.C., lists the types of transactions that are subject to sales tax:

1. Except as otherwise expressly provided in subsection 2 for sales of mobile homes used for residential or business purposes; for sales of farm machinery, farm machinery repair parts, and irrigation equipment used exclusively for agricultural purposes; and except as otherwise expressly provided in this chapter, there is imposed a tax of five percent upon the gross receipts of retailers from all sales at retail including the leasing or renting of tangible personal property as provided in this section, within this state of the following to consumers or users:

 a. Tangible personal property, consisting of goods, wares, or merchandise, except mobile homes used for residential or business purposes and farm machinery, farm machinery repair parts, and irrigation equipment used exclusively for agricultural purposes.

 b. The furnishing or service of communication services or steam other than steam used for processing agricultural products.

 c. Tickets or admissions to places of amusement or entertainment or athletic events, including amounts charged for participation in an amusement, entertainment, or athletic activity, and including the furnishing of bingo cards and the playing of any machine for amusement or entertainment in response to the use of a coin. The tax imposed by this section applies only to eighty percent of the gross receipts collected from coin-operated amusement devices.

 d. Magazines and other periodicals.

 e. The leasing or renting of a hotel or motel room or tourist court accommodations.

 f. The leasing or renting of tangible personal property the transfer of title to which has not been subjected to a retail sales tax under this chapter or a use tax under chapter 57–40.2.

 g. Coal mined in this state and used for heating buildings, except for coal used in agricultural processing or sugar beet refining plants.

N.D.C.C. § 57–39.2–02.1(1). Nowhere in section 57–39.2–02.1(1) is there any reference to coupons or coupon books. Section 81–04.1–01–28, N.D. Admin. Code, provides in part, "[s]ales of coupons, coupon books, and other certificates which entitle the holder to a discount or other price advantage on the purchase of goods or services, whether or not the goods or services are subject to sales or use tax, are taxable as sales of tangible personal property." Thus, in enacting N.D. Admin. Code § 81–04.1–01–28, the Commissioner did not merely explain a procedure for

applying the sales tax to sales of coupon books, but concluded that sales of coupon books constituted sales of "[t]angible personal property, consisting of goods, wares, or merchandise," under N.D.C.C. § 57–39.2–02.1(1)(a). If sales of coupons books do not constitute sales of "[t]angible personal property, consisting of goods, wares, or merchandise," such an action on the part of the Commissioner would amount to an unauthorized amendment of N.D.C.C. § 57–39.2–02.1(1). As we explained in *Moore v. N.D. Workmen's Comp. Bureau:*

> Since the power to make regulations is administrative in nature, legislation may not be enacted under the guise of its exercise by issuing a "regulation" which is out of harmony with, or which alters, extends, or limits, the statute being administered, or which is inconsistent with the expression of the lawmakers' intent in other statutes. The administrative officer's power must be exercised within the framework of the provision bestowing regulatory powers on him and the policy of the statute which he administers. He cannot initiate policy in the true sense, but must fundamentally pursue a policy predetermined by the same power from which he derives his authority.

374 N.W.2d 71, 74 (N.D.1985) (quoting *Med. Properties v. N.D. Board of Pharm.*, 80 N.W.2d 87, 90 (N.D.1956)). A regulation which exceeds the Commissioner's statutory authority or conflicts with the statute that it implements is void. *See Little v. Traynor*, 1997 ND 128, ¶ 30, 565 N.W.2d 766; *Little v. Tracy*, 497 N.W.2d 700, 704 (N.D.1993). Thus, the determination of whether the Commissioner exceeded statutory authority in promulgating a rule which taxes sales of coupon books as sales of tangible personal property necessarily turns on the resolution of the issue of whether sales of coupon books constitute sales of tangible personal property under N.D.C.C. § 57–39.2–02.1(1)(a).

[¶ 14] Our primary goal in statutory construction is to ascertain the intent of the Legislature. *See Western Gas Resources*, 489 N.W.2d at 872. In ascertaining the Legislature's intent, we first look to the plain language of the statute and give each word of the statute its ordinary meaning. *See Estate of Thompson*, 1998 ND 226, ¶ 7, 586 N.W.2d 847. We construe the statute as a whole and give effect to each of its provisions if possible. *Id.* If the language of the statute is clear and unambiguous, we cannot ignore that language under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. *Id.* However, if the language of a statute is ambiguous, we may resort to extrinsic aids to interpret the statute. *Id.* "[I]f a tax statute is ambiguous so that the legislative intention with respect to the meaning of the statute is doubtful, the doubt must be resolved in favor of the taxpayer." *Rocky Mountain Oil*, 405 N.W.2d at 281.

[¶ 15] In regard to tangible personal property, the plain language of N.D.C.C. § 57–39.2–02.1(1) provides:

> [T]here is imposed a tax of five percent upon the gross receipts of retailers from all sales at retail including the leasing or renting of tangible personal property as provided in this section, within this state of the following to consumers or users:
>
> a. Tangible personal property, consisting of goods, wares, or merchandise....

The Legislature has not, however, defined the phrase "[t]angible personal property, consisting of goods, wares, or merchandise," as used in N.D.C.C. § 57–39.2–02.1(1)(a).

[¶ 16] The Legislature has provided a definition of "tangible personal property"

for North Dakota's use tax statutes. As used in ch. 57–40.2, N.D.C.C.:

"Tangible personal property" means:

a. Tangible goods, including the furnishing of bingo cards, wares, and merchandise, and gas, when furnished or delivered to consumers or users within this state, and the sale of vulcanizing, recapping, and retreading services for tires.

b. The leasing or renting of tangible personal property, the sale, storage, use, or consumption of which has not been previously subjected to a retail sales or use tax in this state.

c. The purchase of magazines or other periodicals. Provided, the words "magazines and other periodicals" as used in this subdivision do not include newspapers nor magazines or periodicals that are furnished free by a nonprofit corporation or organization to its members or because of payment by its members of membership fees or dues.

d. The severance of sand or gravel from the soil.

N.D.C.C. § 57–40.2–01(8). This definition, however, is of little help to us in this case because the only portion of the definition that could possibly include coupon books is the phrase "tangible goods." *See* N.D.C.C. § 57–40.2–01(8)(a). Thus, even if we were to rely on this definition, it would be necessary for us to interpret the phrase "tangible goods" of N.D.C.C. § 57–40.2–01(8)(a), just as it is necessary for us to interpret the phrase "[t]angible personal property, consisting of goods, wares, or merchandise," of N.D.C.C. § 57–39.2–02.1(1)(a).

[¶ 17] The phrase "tangible personal property" literally means "[c]orporeal personal property of any kind; personal property that can be seen, weighed, measured, felt, or touched, or is in any way perceptible to the senses." *See Black's Law Dictionary* 1234 (7th ed.1999); *see also Bismarck Tribune Co. v. Omdahl,* 147 N.W.2d 903, 906 (N.D.1966) (stating that tangible personal property is "personal property that can be touched or handled"). Thus, N.D.C.C. § 57–39.2–02.1(1)(a) could be literally construed to subject every transaction in which the transfer of personal property that can be touched or handled occurs to sales tax. However, the question of whether an item falls within the literal definition of tangible personal property is distinct from the question of whether a taxable sale of tangible personal property has taken place. For example, items such as promissory notes and stock certificates clearly fall within the literal definition of tangible personal property; however, for taxation purposes, such items are generally regarded as intangible property because their value is derived from the intangible rights they represent. *See Navistar Int'l Transp. Corp. v. State Board of Equalization,* 8 Cal.4th 868, 35 Cal.Rptr.2d 651, 884 P.2d 108, 110 (1994). Thus, an intangible right may be evidenced by a physical object capable of perception by the senses, but nevertheless, considered intangible property for purposes of the law of taxation. *Id.* As other provisions of N.D.C.C. § 57–39.2–02.1(1) illustrate, the mere fact that a transaction involves the transfer of what is literally tangible personal property, does not necessarily mean a sale of "[t]angible personal property, consisting of goods, wares, or merchandise," has occurred under N.D.C.C. § 57–39.2–02.1(1)(a).

[¶ 18] Under N.D.C.C. § 57–39.2–02.1(1), sales of tickets to places of amusement or entertainment or athletic events are listed as taxable events distinct from sales of tangible personal property, consisting of goods, wares, or merchandise. *See* N.D.C.C. § 57–39.1–02.1(1)(c). When an individual purchases a ticket, an item of

personal property that can be touched or handled is transferred, i.e., the ticket itself. Thus, if we were to construe N.D.C.C. § 57–39.2–02.1(1)(a) to encompass all sales in which personal property that can be touched or handled is transferred, sales of tickets would be subsumed in sales of tangible personal property, thereby rendering N.D.C.C. § 57–39.2–02.1(1)(c) "mere surplusage." *See Bruns v. N.D. Workers Comp. Bureau,* 1999 ND 116, ¶ 16, 595 N.W.2d 298. We do not presume the Legislature intended such an idle act. *See North Dakota Fair Housing Council, Inc. v. Peterson,* 2001 ND 81, ¶ 19, 625 N.W.2d 551 ("Statutes are construed to give effect to each provision."); *Adams County Record v. Greater North Dakota Ass'n,* 529 N.W.2d 830, 838 n. 2 (N.D.1995) (stating that it would be absurd to construe a statute in a manner that would render a portion of the statute redundant). Rather, when N.D.C.C. § 57–39.2–02.1(1) is read as a whole to give effect to each provision, it reveals an intention on the part of the Legislature to distinguish sales of "[t]angible personal property, consisting of goods, wares, or merchandise," *see* N.D.C.C. § 57–39.2–02.1(1)(a), from sales of intangible rights and services in which the transfer of tangible personal property occurs to symbolize the transfer of such rights. *See Comptroller of Treasury v. Washington Nat'l Arena, Ltd.,* 66 Md.App. 416, 504 A.2d 666, 672 (Spec.App.1986) (finding substantial evidence that tickets are merely physical symbols of an abstract right); *Wisconsin Dept. of Revenue v. Milwaukee Brewers Baseball Club,* 111 Wis.2d 571, 331 N.W.2d 383, 388 (1983) (reasoning that sales of tickets to baseball games were not sales of tangible personal property because the tickets "were merely indicia establishing that the holder was entitled to admission to the event"). In discussing an earlier version of N.D.C.C. § 57–39.2–02.1, a Special Assistant Attor-

ney General for the Office of the North Dakota State Tax Commissioner explained:

> The law broadly imposes a tax on sales of tangible personal property, on the sale or the furnishing of certain services, and on the sale of *certain designated intangibles,* including but not limited to the leasing or renting of tangible personal property. The specific services subjected to tax are steam, gas, electricity, water and communication services. *The intangibles or semi-intangibles subjected to tax are tickets or admissions to places of amusement, entertainment or athletic events,* including the amounts charged for participation therein as well as receipts derived from the playing of a machine for amusement or entertainment in response to the use of a coin and the sale of subscriptions to magazines and periodicals.

Joseph R. Maichel, *North Dakota Sales and Use Tax Laws and Their General Application,* 47 N.D. Law Rev. 383, 384 (1971) (footnote omitted) (emphasis added). Thus, under N.D.C.C. § 57–39.2–02.1(1), all sales of "[t]angible property, consisting of goods, wares, or merchandise," are subject to sales tax, but sales of intangible property are not subject to sales tax unless specifically designated.

[¶ 19] We note that under N.D.C.C. § 57–39.2–02.1(1), sales of "[m]agazines and other periodicals" are also listed as taxable events distinct from sales of "[t]angible personal property, consisting of goods, wares, or merchandise." *See* N.D.C.C. § 57–39.2–02.1(1)(d). The reason for this distinction is best understood by examining the history of North Dakota's sales tax as applied to sales of magazines. While sales of magazines had always been subject to sales tax apart from any specific provision providing for their taxation, it was debatable if sales tax could be collected from publishers for sell-

ing subscriptions to magazines. *See Hearing on S.B. 108 Before the House Comm. on Fin. & Taxation,* 37th N.D. Legis. Sess. (Feb. 27, 1961) (testimony of Kenneth Jakes, Tax Department); *see also Time, Inc. v. Hulman,* 31 Ill.2d 344, 201 N.E.2d 374, 377 (1964) (applying the true object of the transaction test to determine if sales of subscriptions to magazines constituted sales of tangible personal property); Maichel, *supra,* at 384 (listing sales of subscriptions to magazines as sales of intangible or semi-intangible property). Therefore, in 1961, the Legislature amended former N.D.C.C. § 57–39–02 to impose a tax on "all sales of subscriptions to magazines and other periodicals." *See* 1961 N.D. Sess. Laws ch. 363, § 2. In 1963, this provision was modified to read "[m]agazines and other periodicals, including subscriptions thereto." 1963 N.D. Sess. Laws ch. 399, § 2. However, nothing in the legislative history indicates that this modification was in any way intended to affect the manner in which sales of magazines and sales of subscriptions to magazines were taxed under the 1961 amendments. *Compare H.B. 559,* 38th N.D. Legis. Sess. (1963) *with Report of the House Comm. on Fin. and Taxation on H.B. 559,* 38th N.D. Legis. Sess. (1963) (Explanatory Note Amendments to H.B. 559). In 1981, the Legislature deleted the phrase "including subscriptions thereto" from N.D.C.C. § 57–39.2–02.1(1)(d), thereby eliminating the tax on sales of subscriptions to magazines, but maintaining the tax on sales of magazines that had existed both under the 1961 amendments and prior to the 1961 amendments. *See* 1981 N.D. Sess. Laws ch. 599, § 2; *Hearing on S.B. 2223 Before the House Comm. on Fin. and Taxation,* 47th N.D. Legis. Sess. (Feb. 25, 1981) (testimony of Sen. Olin). Thus, as the legislative history illustrates, N.D.C.C. § 57–39.2–02.1(1)(d) does not represent an intention on the part of the Legislature to distinguish sales of magazines from sales of tangible personal property, but rather, this subsection is a remnant of the earlier tax on sales of subscriptions to magazines.

[¶ 20] In this case, when American West sells a coupon book, tangible personal property is transferred, i.e., the coupon book itself. However, when American West sells a coupon book, intangible property is also transferred, i.e., the right to receive discounts and free products and services from American West's clients. The sale of the right to receive discounts and free products is not one of the sales of intangible property that is designated as taxable under N.D.C.C. § 57–39.2–02.1(1). *See* Maichel, *supra,* at 384. When a transaction involves both a transfer of tangible personal property and a transfer of intangible personal property that is not designated as taxable, it is often difficult to determine whether the transaction is subject to sales tax under the governing statute. The Minnesota Supreme Court, in determining whether mailing lists used by a direct-mail merchandiser were tangible personal property under Minnesota's use tax statutes, explained:

In our view, the question presented in the instant case is extremely close, and we do not find the resolution easy. Intangible property, such as information, may be transferred with or without the use of a tangible medium. When a tangible medium is used, it is often the case that such use is merely incidental to the substance of the transaction between the supplier and the consumer of the intangible. Yet our taxing statute makes no distinction regarding the nature of the tangible property subject to taxation; if tangible property is used or consumed, such use or consumption is taxed. Our statute does not, however, impose a tax on the use or consumption

of intangible personal property. The line of demarcation between the use of intangible property and the use of its tangible manifestation is not a clear one. *Fingerhut Prods. Co. v. Comm'r of Revenue*, 258 N.W.2d 606, 610 (Minn.1977).

[¶ 21] To aid in determining the taxability of a transaction which involves the transfer of both tangible personal property and intangible personal property, a number of jurisdictions focus on the "essence," or "true object," of the transaction. *See, e.g., Dine Out Tonight Club, Inc. v. Dept. of Revenue Servs.*, 210 Conn. 567, 556 A.2d 580, 583 (1989); *Consol. Freightways Corp. v. Dept. of Revenue and Tax.*, 112 Idaho 652, 735 P.2d 963, 966 (1987); *First Nat'l Bank v. Dept. of Revenue*, 85 Ill.2d 84, 51 Ill.Dec. 667, 421 N.E.2d 175, 178–79 (1981); *Occidental Chem. Corp. v. Dept. of Revenue and Tax.*, 751 So.2d 397, 401 (La.Ct.App.2000); *Sneary v. Dir. of Revenue*, 865 S.W.2d 342, 345 (Mo.1993); *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 168 (Tex. 1977). The true object test "focuses on the essentials of the transaction to determine the real object the buyer seeks." *Sneary*, 865 S.W.2d at 345. Under this test, a transaction which involves the transfer of both tangible property and intangible property is not subject to sales tax if the consumer's true object in entering into the transaction is to obtain the intangible property. *See id.* In such transactions, the tangible property "serves exclusively as the medium of transmission for an intangible product or service" and "is of little utility and may even be discarded after the buyer has used it to obtain access to the intangible component." *Id.*

[¶ 22] In light of the statutory framework of N.D.C.C. § 57–39.2–02.1, we find the true object of the transaction test to be useful in determining whether American West's sales of coupon books constitute sales of "[t]angible personal property, consisting of goods, wares, or merchandise," under N.D.C.C. § 57–39.2–02.1(1)(a). As discussed earlier, N.D.C.C. § 57–39.2–02.1(1) imposes a tax on all sales of "[t]angible personal property, consisting of goods, wares, or merchandise," but it only imposes a tax on those sales of intangible property that are specifically designated as taxable. *See* N.D.C.C. § 57–39.2–02.1(1). When American West sells a coupon book, both tangible personal property, i.e., the coupon book, and intangible property, i.e., the right to receive discounts and free products and services from American West's clients, are transferred. Consequently, to resolve the issue of whether American West's sales of coupon books are taxable as sales of "[t]angible personal property, consisting of goods, wares, or merchandise," we must determine if the true object, or essence, of the sales are the coupon books or the intangible rights to receive discounts and free products and services from American West's clients. The parties in this case have stipulated to the facts and do not dispute any of the factual findings of the administrative law judge. We, therefore, make this determination as a matter of law on appeal. *See First Nat'l Bank*, 85 Ill.2d 84, 51 Ill.Dec. 667, 421 N.E.2d 175, 176, 178 (applying the essence of the transaction test to affirm the trial court's conclusion that the taxpayer's purchases of computer software programs were purchases of intangible property as a matter of law); *Occidental Chem. Corp.*, 751 So.2d at 400–401 (stating that the trial court's conclusion that a transaction constituted a sale of tangible personal property rather than intangible personal property was "primarily a legal conclusion rather than a factual one"); *Ash v. Traynor*, 1998 ND 112, ¶ 5, 579 N.W.2d 180 ("Because the parties presented stipulated facts and exhibits, this appeal presents

only questions of law."); *Northern X-Ray*, 542 N.W.2d at 738 (declining to defer to the Commissioner's interpretation of the word contractor and determining on appeal that a taxpayer did not fall within the statutory definition of a contractor where the facts of the case were not in dispute); *Questar Data Sys. v. Comm'r of Revenue*, 549 N.W.2d 925, 928 (Minn.1996) (examining the essence of the transaction between a taxpayer and it's customers as a question of law).[5]

[¶ 23] In *Dine Out Tonight*, the Supreme Court of Connecticut applied the true object of the transaction test to resolve an issue similar to the one presented in this case. 556 A.2d at 582–83. In *Dine Out Tonight*, members of a club paid a membership fee in exchange for a card that entitled them to a free meal with the purchase of a second meal of equal or greater value at restaurants participating in the club's plan. *See id.* at 581. A member also received a directory of the participating restaurants. *See id.* Under Connecticut's sales tax statutes, tangible personal property was defined as "personal property which may be seen, weighed, measured, felt or touched or which is in any other manner perceptible to the senses." *See id.* at 582 n. 4. Thus, the issue was whether Dine Out Tonight was engaged in the selling of tangible membership cards and directories, or the selling of the intangible right to free meals. *See id.* at 582–83. In resolving this issue, the court reasoned:

A conclusion as to whether the sales tax is applicable to the plaintiff's membership fees requires a determination of the true object of the transaction between the club and its members. We must therefore ascertain whether the true object of that transaction is to provide club members with a card and a directory or to bestow upon them the intangible right to free meals under specified conditions. The determinant is the intention of the parties. We think that intention is evident. Obviously, prospective club members are not enticed to pay the plaintiff for the prospect of obtaining a card and a directory, items that would be of little or no value without the concomitant right to receive free meals. Conversely, the plaintiff could not expect to stay in business by offering for sale only a card and a directory. Manifestly, the sine qua non of the transaction between the club and its members is the intangible right to receive free meals and access to the knowledge of an expanding list of restaurants that provide them. The membership card and directory are merely indicia of that intangible right and incidental aids to its exercise. Because the

---

5. Our research has revealed only two published cases in which it was stated that the determination of the true object of a transaction is a factual determination. *See Financial Computer Serv. v. Lindley*, 70 Ohio St.2d 243, 436 N.E.2d 1025, 1027 (1982) (per curiam); *Servi-Clean Indust. v. Collins*, 50 Ohio St.2d 80, 362 N.E.2d 648, 652 (Ohio 1977) (per curiam). Subsequent to these two cases, the Supreme Court of Ohio significantly modified the manner in which it applied the true object test. *See Emery Indust. v. Limbach*, 43 Ohio St.3d 134, 539 N.E.2d 608, 610–614 (1989) (per curiam). Since this modification, we are unaware of any Ohio case in which it was stated that the determination of the true object of a transaction is a factual determination rather than a legal one. *See generally WBNS TV, Inc. v. Tracy*, 75 Ohio St.3d 572, 664 N.E.2d 938, 939–41 (1996) (per curiam); *Amerestate, Inc. v. Tracy*, 72 Ohio St.3d 222, 648 N.E.2d 1336, 1337 (1995) (per curiam); *Community Mut. Ins. Co. v. Tracy*, 73 Ohio St.3d 371, 653 N.E.2d 220, 223–24 (1995) (per curiam); *Columbia Gas of Ohio, Inc. v. Limbach*, 69 Ohio St.3d 462, 633 N.E.2d 1108, 1110 (1994) (per curiam); *General Motors Corp. v. Limbach*, 44 Ohio St.3d 115, 541 N.E.2d 593, 595 (1989) (per curiam).

transaction between the plaintiff club and its members is essentially the conveyance of an intangible right to free meals, the plaintiff's membership fees are not subject to the imposition of the Connecticut sales tax.

*Id.* at 583 (citations omitted).

[¶ 24] Similar to the membership cards in *Dine Out Tonight*, the coupon books that American West sells would be of little or no value without the concomitant right to receive discounts and free products and services from American West's clients. *See Dine Out Tonight*, 556 A.2d at 583; *Sneary*, 865 S.W.2d at 345. American West could not expect to stay in business by attempting to sell books of coupons for $43.95 if no rights to receive discounts were attached to those coupons. Likewise, consumers would not be willing to pay American West $43.95 for coupon books if they could not use the coupons in those books to receive discounts from American West's clients. It, therefore, seems evident that when a consumer pays American West $43.95 for a coupon book, the true object of the transaction is not the purchase of the tangible coupon books, but the purchase of the intangible right to receive discounts and free products and services from American West's clients. *See Dine Out Tonight*, at 583; *see also Navistar Int'l Trans. Corp.*, 35 Cal.Rptr.2d 651, 884 P.2d at 110 ("[F]or purposes of the law of taxation, intangible property is defined as including personal property that is not itself intrinsically valuable, but that derives its value from what it represents or evidences."). We conclude the coupon books themselves merely serve as tangible mediums for the transmission of an intangible right. *See Dine Out Tonight*, 556 A.2d at 583; *Sneary*, 865 S.W.2d at 345.

[¶ 25] Although the Commissioner, through the promulgation of N.D. Admin. Code § 81–04.1–01–28, has concluded that sales of coupon books are taxable as sales of tangible personal property, the distinction the Legislature has made between sales of "[t]angible personal property, consisting of goods, wares, or merchandise," and sales of intangible rights outweighs the Commissioner's conclusion. The Commissioner has only interpreted the phrase "tangible personal property" to include sales of coupon books since 1989, *see* N.D. Admin. Code § 81–04.1–01–28, while the Legislature has distinguished sales of "[t]angible personal property, consisting of goods, wares, or merchandise," from sales of intangible rights since 1935, *see* 1935 N.D. Sess. Laws ch. 276, § 2 (listing sales of "tangible personal property, consisting of goods, wares, or merchandise," as taxable events distinct from "sales of tickets or admissions to places of amusement and athletic events"). "[T]he rules that an administrative interpretation of an act is entitled to controlling weight may not be invoked where the interpretation was neither continuous nor contemporaneous with the enactment of the statute." *See* Singer, *supra* § 49:08, 103. Furthermore, while an agency's interpretation of long-duration is entitled to deference, "we will not defer to even a longstanding agency interpretation that is contrary to the intent of the legislature." *Northern X–Ray*, 542 N.W.2d at 738; *accord Medcenter One, Inc. v. N.D. State Bd. of Pharm.*, 1997 ND 54, ¶ 17, 561 N.W.2d 634; *see also* Singer, *supra* § 49:07, 99 (stating that an agency's long-standing interpretation can be overridden by more compelling considerations).

[¶ 26] The statutory scheme of N.D.C.C. § 57–39.2–02.1, when read as a whole, manifests a legislative intent to not tax the sale of intangible personal property unless specifically identified and listed as subject to sales tax. Construing the statute in the broad manner suggested by the

Commissioner would run contrary to this intent by taxing all sales of intangible personal property evidenced by tangible personal property, no matter how negligible the intrinsic value thereof. *See Moore*, 374 N.W.2d at 74 (An administrative officer "cannot initiate policy in the true sense, but must fundamentally pursue a policy predetermined by the same power from which he derives his authority."). Because the Legislature has not designated the sale of coupon books as a sale of intangible personal property that is subject to sales tax under N.D.C.C. § 57–39.2–02.1(1), we must resolve any doubt about their taxation in favor of American West. *See Rocky Mountain Oil*, 405 N.W.2d at 281 ("[I]f a tax statute is ambiguous so that the legislative intention with respect to the meaning of the statute is doubtful, the doubt must be resolved in favor of the taxpayer."). In reaching this conclusion, we are not aware of any jurisdiction that has interpreted the sale of tangible personal property to include the sale of coupon books. We do not intimate that our Legislature could not, if it so chose, tax the sale of coupon books. However, as N.D.C.C. § 57–39.2–02.1 currently exists, sales of coupon books are not taxable as sales of "[t]angible personal property, consisting of goods, wares, or merchandise."

[¶ 27] In concluding that the Commissioner did not exceed statutory authority in taxing sales of coupon books as sales of tangible personal property, the ALJ analogized sales of coupon books to sales of novels and textbooks. We do not agree with this reasoning. The sale of a novel or a textbook, is not merely the sale of raw intangible information. *Cf. Sioux Falls Newspapers v. Sec'y of Revenue*, 423 N.W.2d 806, 810 (S.D.1988) (concluding that syndicated newspaper columns were not raw intangible information, but were "finished product[s] of an artist's or a writer's skills"). Thus, when a consumer purchases a book such as a novel or a textbook, the tangible product of an individual's skills, a sale of "[t]angible personal property, consisting of goods, wares, or merchandise," has taken place. *See Navistar Int'l Trans. Corp.*, 35 Cal.Rptr.2d 651, 884 P.2d at 113 ("[T]he sale of books and pamphlets, although 'purchased for the author's ideas rather than for their physical components,' is generally taxable.").

[¶ 28] In contrast to novels and textbooks, coupon books are books of "certificate[s] or ticket[s] entitling the holder to a specified right, as redemption for cash or gifts, reduced purchase price, etc." *Webster's New World Dictionary* 325 (2d coll. ed.1980) (defining coupon). An individual's purpose in buying a coupon book is not to obtain the book itself, but to obtain the right to receive discounts that are represented by the coupons. *See Dine Out Tonight*, 556 A.2d at 583. The coupon books are used exclusively as mediums to transfer this intangible right and, once this right is exercised or expires, the coupon books are essentially worthless. *See Dine Out Tonight*, 556 A.2d at 583; *Sneary*, 865 S.W.2d at 345. Unlike novels and textbooks, items such as coupon books and tickets are of little or no value without the concomitant rights to receive discounts and attend events. *See Dine Out Tonight*, 556 A.2d at 583; *Washington Nat'l Arena*, 504 A.2d at 672.

IV

[¶ 29] We conclude that sales of coupon books are not sales of "[t]angible personal property, consisting of goods, wares, or merchandise," under N.D.C.C. § 57–39.2–02.1(1). Thus, the portion of N.D. Admin. Code § 81–04.1–01–28 which provides: "Sales of coupons, coupon books, and other certificates which entitle the holder to a

discount or other price advantage on the purchase of goods or services, whether or not the goods or services are subject to sales or use tax, are taxable as sales of tangible personal property," is beyond the scope of the Commissioner's statutory authority and is, therefore, void. *See Moore,* 374 N.W.2d at 74, 75. Consequently, American West is not liable for the $20,883.51 in sales tax assessed by the Commissioner. *Cf. Northern X–Ray,* 542 N.W.2d at 738 (holding that a taxpayer was neither liable for taxes under the administrative regulation nor the regulation's governing statute). We reverse the decision of the district court and remand to the Tax Commissioner for further proceedings consistent with this opinion.

[¶ 30] NEUMANN and KAPSNER, JJ. concur.

VANDE WALLE, Chief Justice, concurring.

[¶ 31] I concur in the opinion Justice Maring has authored for the Court. I write separately only to emphasize this case was argued to the Court by the state Tax Commissioner on the theory the Commissioner has the authority to decide that the coupon books are tangible personal property which could be taxed at the value at which they were sold under N.D.C.C. § 57–39.2–02.1(1). I agree the Tax Commissioner is not given the authority to declare as tangible personal property that which is not such property.

[¶ 32] We were told at oral argument that when the coupons are redeemed for discounts or free products or services from the participating merchant, sales tax is collected only on the actual amount paid the retailer by the coupon holder.

[¶ 33] The authority of the Tax Commissioner to enact a regulation taxing the purchaser of the coupons, the coupon holder, for that part of the cost of the products

or services represented by the coupon book was not the basis for the Tax Commissioner's argument; rather, the argument was that the coupon book itself was the tangible personal property. Nor was the authority of the Tax Commissioner to require that the purchaser pay tax on the original purchase price, notwithstanding the coupon, an issue before the Court. For example, the Tax Commissioner, in the same section of the Administrative Code with which we are concerned, N.D. Admin. Code § 81–04.1–01–28, has enacted a regulation that states "[w]hen a manufacturer, processor, or wholesaler issues a coupon entitling a purchaser to credit on the item purchased, the tax is due on the total gross receipts."

[¶ 34] So, too, the regulation provides sales of gift certificates or other forms of credit which may be redeemed by the holder for equivalent cash value are not subject to tax when sold, but "the value of these certificates is taxable when redeemed if they are redeemed for taxable goods or services."

[¶ 35] Thus the issue before the Court challenged the rationale or method on which the Tax Commissioner premised the taxation of the coupon books. The question of whether the Tax Commissioner can collect sales tax on that portion of the price of good and services paid for with coupons was not before the Court and is not answered by the Court's opinion except to the extent that the coupon book cannot be taxed as the sale of tangible personal property.

[¶ 36] I do not agree with the dissent that legislative acquiescence and deference to administrative agency interpretation justify the transformation of the sale of a book of paper coupons into tangible personal property for taxation purposes. Neither do I agree it is necessary to revise

our case law on legislative acquiescence and deference to administrative agency interpretation. Legislative acquiescence and deference is more significant to me where the statute is subject to two reasonable constructions. Here, I consider the Tax Commissioner's construction is not a reasonable construction of the statute for the reasons stated in the majority opinion. They are, after all, only tools to assist a court in construing a statute. They are not absolutes.

SANDSTROM, Justice, dissenting.

[¶ 38] I respectfully dissent. The majority has misstated our law on legislative acquiescence and judicial deference to longstanding administrative agency interpretation of a statute. The majority also ignores *Voss v. Gray*, 70 N.D. 727, 298 N.W. 1 (1941), in which this Court concluded there was legislative acquiescence to the Tax Commissioner's longstanding interpretation of "tangible personal property"—even though the interpretation was not contemporaneous with the original adoption of the statute.

[¶ 39] The Tax Commissioner has authority to adopt administrative rules having the force and effect of law. *See* N.D.C.C. § 57–39.2–19 ("commissioner may prescribe all rules and regulations not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate the purposes"); N.D.C.C. § 28–32–06 ("Upon becoming effective, rules have the force and effect of law until amended or repealed by the agency, declared invalid by a final court decision, suspended or found to be void by the administrative rules committee, or determined repealed by the office of the legislative council because the authority for adoption of the rules is repealed or transferred to another agency."). The Tax Commissioner has exercised that authority. The legislature's interim Administrative Rules Committee reviewed the rule in question to see whether it was properly implemented by the Tax Commissioner or whether it conflicted with legislative intent; the Administrative Rules Committee concluded it did not. *See infra* ¶¶ 52–60. After that review, the legislature amended and reenacted N.D.C.C. § 57–39.2–02.1 four times, leaving N.D. Admin. Code § 81–04.1–01–28 untouched.

[¶ 40] The coupon books are undeniably tangible—touchable, physical—personal property. The majority does not dispute that taxing such books is clearly within the taxing power of the State. The question becomes, what has the legislature done and what has it intended? The majority does not argue that the answer is clear on the face of the statute, but arrives at its answer by looking to the jurisprudence of states other than North Dakota.

I

[¶ 41] The majority, at ¶¶ 7–8, frames the issue for review as "whether the Commissioner correctly interpreted the phrase '[t]angible personal property, consisting of goods, wares, or merchandise'" and cites to *Northern X–Ray Co., Inc. v. State ex rel. Hanson*, 542 N.W.2d 733, 735 (N.D. 1996), for the proposition that "whether the Commissioner correctly interpreted a statute is a question of law which is fully reviewable by this Court on appeal." *Northern X–Ray* did not involve either legislative acquiescence to an administrative rule or deference to a longstanding administrative agency interpretation of a statute. Although the agency in *Northern X–Ray* attempted to argue its regulations provided a definition for "contractor," this Court found the agency's interpretation was not helpful because its definition of "contractor" contained the same ambiguity

as the underlying statute. *Northern X–Ray,* at 738 ("This regulation, however, presents the same problems as the statute: ambiguous use of the term 'contractor.' "). *Northern X–Ray* focused on the definition of a term neither defined by rule nor subject to a longstanding agency interpretation, a situation entirely different from the one presented here in which an agency's regulation provides a definition of a statutory term. By relying on *Northern X–Ray* and framing the issue on appeal as the interpretation of a statute, the majority oversimplifies the analysis appropriate when determining the validity of an administrative rule.

[¶ 42] The majority, at ¶ 10, acknowledges the legislature has reenacted N.D.C.C. § 57–39.2–02.1 since the Tax Commissioner adopted N.D. Admin. Code § 81–04.1–01–28, but it misstates both the doctrine of reenactment and the doctrine of legislative acquiescence as defined by North Dakota case law.

[¶ 43] Two North Dakota cases set forth the general rule of the reenactment doctrine. In *Payne v. Bd. of Trustees of the Teachers' Ins. & Ret. Fund,* 76 N.D. 278, 35 N.W.2d 553, 557–58 (1948), this Court discussed the deference that should be given to an agency's interpretation of a statute when the legislature has subsequently reenacted the statute.

> It is not disputed that [the agency's interpretation] has been the administrative practice since the adoption of the law. During that time the legislature has met in many sessions and made several amendments to the law but none in regard to this procedure. There is at least a strong presumption that the legislature knew and approved the contemporaneous and practical construction placed upon the [statute] by the officers charged with its administration.
>
> ....

> "Executive construction is entitled to additional weight where it has been impliedly indorsed by the legislature, as by the reenactment of the statute or the passage of a similar one, in the same or substantially the same terms, . . . ."

This Court cited approvingly to *Payne* in another case regarding a reenacted statute. *See Schmutzler v. Workmen's Comp. Bureau,* 78 N.D. 377, 49 N.W.2d 649 (1951). This Court stated:

> Following the codification and the enactment of [the statute], and its reenactment . . . the Workmen's Compensation Bureau continued the interpretation of this Act in accordance with the limitations set out in Chapter 260, S.L.1929. The Bureau treated the statute as unchanged. The practical and contemporaneous construction placed upon the statute by the officers charged with its enforcement may be considered in determining the meaning of the law. *See Payne v. Board of Trustees,* 76 N.D. 278, 35 N.W.2d 553 and cases cited.

*Id.* at 652.

[¶ 44] Rather than follow the precedent set forth in *Payne* and *Schmutzler,* the majority, at ¶ 11, cites to a treatise on statutory interpretation and cases from foreign jurisdictions for the proposition that "[the reenactment doctrine] does not apply where nothing indicates that the legislature had its attention directed to the administrative interpretation upon reenactment." Section 49:09 of *Statutes and Statutory Construction* sets forth the general doctrine of reenactment:

> [The reenactment doctrine] is based upon the theory that the legislature is familiar with the contemporaneous interpretation of a statute, especially when made by an administrative body or executive officers charged with the duty of administering or enforcing that statute.

Therefore it impliedly adopts the interpretation upon reenactment. Legislative adoption is presumed conclusive when repeated reenactments follow a notorious practical interpretation.... The rule is of special importance where administrative rulings and interpretations are under constant observation of the legislature. It does not apply where nothing indicates that the legislature had its attention directed to the administrative interpretation upon reenactment. 2B Norman J. Singer, *Statutes and Statutory Construction* § 49:09, 108–10 (6th ed.2000 rev.). The majority's reliance upon the last sentence is misplaced. North Dakota law does not acknowledge this exception. *See Schmutzler v. Workmen's Comp. Bureau,* 78 N.D. 377, 49 N.W.2d 649 (1951); *Payne v. Bd. of Trustees of the Teachers' Ins. & Ret. Fund,* 76 N.D. 278, 35 N.W.2d 553 (1948).

[¶ 45] In a further attempt to discount the precedent of *Payne* and *Schmutzler,* the majority, at ¶ 10, places great emphasis on the "contemporaneous" nature of the interpretations. The majority, at ¶ 10, argues that because here the Tax Commissioner's interpretation of N.D.C.C. § 57–39.2–02.1 did not take place until "54 years after the Legislature first applied the sales tax to sales of '[t]angible personal property, consisting of goods, wares, or merchandise,'" the precedent in *Payne* and *Schmutzler* does not apply. Again the majority misstates our law on legislative acquiescence.

[¶ 46] "A contemporaneous construction of a statute is 'given special consideration since it was made at a time when the circumstances leading up to the enactment of the statute were well known.'" *Johnson v. Wells County Water Resource Board,* 410 N.W.2d 525, 529 (N.D.1987) (quoting 2A *Sutherland Statutory Construction* § 49.08, at 398 (Sands 4th ed.1984 rev.)). *Johnson* and other cases reciting the contemporaneous nature of an agency's interpretation do not require that an interpretation be contemporaneous before it can be given any consideration. *See id.* Further, in at least two instances, this Court has held the legislature acquiesced in a non-contemporaneous construction of a statute by an administrative agency. *See Voss v. Gray,* 70 N.D. 727, 298 N.W. 1 (1941); *Northern States Power Co. v. Board of R.R. Comm'rs,* 71 N.D. 1, 298 N.W. 423 (1941).

[¶ 47] In *Voss,* this Court was also presented with the issue of whether an agency's interpretation of what constituted a sale under the phrase "sale ... of tangible personal property" was contrary to legislative intent. *Voss v. Gray,* 70 N.D. 727, 298 N.W. 1, 2 (1941). The transaction at issue was a sale of photographs by a photographer. *Id.* The Tax Commissioner determined the sale of photographs "result[ed] in a sale of tangible personal property" and was taxable. *Id.* at 2–3. The taxpayer argued the photographs were the sale of personal services, "his artistic ability and skill." *Id.* at 3. The taxpayer also argued, because the sale of photographs was not originally determined to be a taxable sale, the Tax Commissioner was prohibited from taxing the sale of photographs. *Id.* at 4. This Court deferred to legislative acquiescence and stated:

Plaintiff also urges that when the Sales Tax Act, *supra,* was first enacted in 1935, the tax commissioner who was charged with its enforcement, ruled that no tax charge should be made on account of the sale of photographs; that this ruling was in effect in 1937 when the Sales Tax Act was re-enacted; that the legislature is presumed to have known of the ruling and accordingly the act was re-enacted with that ruling in mind. So plaintiff contends it must be

held that this construction of the 1935 act was adopted by the re-enactment of the act in 1937.

It is true that in construing a statute of doubtful meaning a court will give weight to the practical construction placed thereon by the officers charged with the duty of executing and applying the statute, especially where the construction has been in effect for a considerable time and acquiesced in by those affected by it. And it is likewise true that the legislature is presumed to know the construction of its statutes by the executive departments of the state. And where a statute which has been given a particular practical construction by the officers charged with its application and enforcement is re-enacted, this fact is pertinent in determining the legislative intent, and the presumption is that the legislative intent was that the re-enacted statute should be thus construed. But this is, after all, only a presumption and may be overborne when all the circumstances in connection with the matter are taken into consideration. In the instant case it appears that when the Sales Tax Act was first put into effect in 1935, the Tax Commissioner's office did rule that no sales tax should be charged and collected by photographers for photographs made and sold. The Sales Tax Act, chapter 276, Session Laws 1935, imposed the tax only for the period "beginning the first day of May, 1935, and ending May 1, 1937." In 1937 this act was re-enacted with but slight changes and the tax was reimposed for the period "beginning the first day of May, 1937, and ending June 30th, 1939." *Immediately after its re-enactment the tax commissioner amended his prior ruling as to the effect of the tax with respect to photographers, and ruled that they should collect a charge in the amount of the tax on photographs made*

*and delivered to their customers for a consideration by them. This ruling has continued in effect since that time.* While it was so in effect in 1939, the legislative assembly again re-enacted the Sales Tax Act without change and provided that the tax should be imposed for the period "beginning the first day of July, 1939, and ending June 30th, 1941." And again in 1941 the tax was reimposed for the period "beginning the first day of July, 1941, and ending June 30, 1943." *We think that under these circumstances it cannot be said that the legislative intention was that no tax should be charged on account of the sale of photographs to their customers by photographers.*

*Id.* at 4–5 (emphasis added). As demonstrated in *Voss*, the contemporaneous nature of an interpretation is not controlling. In *Voss*, this Court held that a legislative reenactment followed by a change in agency interpretation, and a subsequent reenactment by the legislature, results in the legislative acquiescence and agreement to the intent embodied in the more recent agency interpretation. *Id.* at 5.

[¶ 48] Similarly, in *Northern States Power Co. v. Board of R.R. Comm'rs*, this Court held the legislature had acquiesced in a statutory interpretation by an administrative agency even when the agency had reversed its prior interpretation. The Board of Railroad Commissioners was required to set the fair value of properties used to provide electric, gas, and steam heat services when establishing the rate base for those services. 71 N.D. 1, 298 N.W. 423, 427 (1941). Beginning in 1913, the Board of Railroad Commissioners determined "fair value" using the "prudent investment" or "original cost" method when setting rates. *Id.* at 427, 430. Then, in 1923, the Board of Railroad Commissioners began to follow federal precedent

and determine "fair value" using the "value of the property . . . as of the time of the inquiry" or "reconstruction value" method of setting rates. *Id.* at 430. The second interpretation by the Board of Railroad Commissioners was consistently followed after 1923 and "received judicial approval in the case of *City of Grand Forks v. Red River Power Co.,* which was appealed to the District Court." *Id.* This Court stated:

> Thus for almost twenty years [the statute] has been construed by the Board of Railroad Commissioners as a statutory adoption of the rule of valuation laid down by the Federal Courts commencing with the decision in *Smyth v. Ames.* Ten Legislative Assemblies have met since the Commission's decision in *re Western Electric Co.,* and no amendment has been made of the statute. As was said by Judge Nuessle, in *State v. Equitable Life Assurance Society,* 68 N.D. 641, 653, 282 N.W. 411, 416: "This is pertinent in determining the legislative intent. The 'Legislature is presumed to know the construction of its statutes by the executive departments of the state.'"

*Id.* at 430 (citations omitted). This Court summarized by stating, " 'in construing a statute of doubtful meaning the court will give weight to the long-continued practical construction placed thereon by officers charged with the duty of executing and applying the statute' to the judicial construction of such statute by an inferior court, and to the legislative acquiescence in both the departmental and judicial construction." *Id.* at 430 (citations omitted).

[¶ 49] As *Voss* and *Northern States Power* demonstrate, a "non-contemporaneous" interpretation by an administrative agency is entitled to deference and may also be used as evidence of legislative intent.

[¶ 50] More recently, in *Effertz v. N.D. Workers Comp. Bureau,* 525 N.W.2d 691, 693 (N.D.1994), we reviewed a challenge to the Workers Compensation Bureau's interpretation of the phrase "weekly benefit." We concluded the legislature had acquiesced by failing to amend the statute:

> The legislature is presumed to know the construction of its statutes by the executive departments of the State and the failure to amend the statute indicates legislative acquiescence in that construction.

*Id.; see also Eklund v. Eklund,* 538 N.W.2d 182, 188 (N.D.1995) (legislature is presumed to know the construction of its statutes and acquiesces in that construction if it fails to offer any amendments); *Capital Electric Coop., Inc. v. Public Service Comm'n,* 534 N.W.2d 587, 592 (N.D. 1995) (same).

[¶ 51] Contrary to the majority's conclusion, the legislature's chosen action of reenacting N.D.C.C. § 57–39.2–02.1 without amendment is evidence of the legislature's acquiescence in the construction given the statute by the Tax Commissioner. *See, e.g., Effertz,* 525 N.W.2d at 693. Even if we were to adopt the interpretation of the reenactment doctrine relied upon by the majority, it would not apply to this case because the legislature's attention was directed to the amendment made to N.D. Admin. Code § 81–04.1–01–28.

II

[¶ 52] Although the majority, at ¶ 11, states "there is nothing in the legislative history of N.D.C.C. § 57–39.2–02.1 or in the record before this Court to indicate the Legislature considered the 1989 amendments to N.D. Admin. Code § 81–04.1–01–28 during any of the reenactments of N.D.C.C. § 57–39.2–02.1," the Administrative Rules Committee reviewed the adoption and each amendment of N.D. Admin.

Code § 81–04.1–01–28. *See Minutes of the Administrative Rules Comm.* 10–11 (March 29, 1990); *Minutes of the Administrative Rules Comm.* 8 (July 11, 1989); *Minutes of the Administrative Rules Comm.* 9 (March 24, 1988); *Minutes of the Administrative Rules Comm.* 12 (October 14, 1986).

[¶ 53] The Administrative Rules Committee is provided for in N.D.C.C. § 54–35–02.5. Section 54–35–02.6, N.D.C.C., sets forth the Committee's duties and provides, in part:

> The administrative rules committee shall review administrative rules adopted under chapter 28–32. The committee shall consider oral and written comments received concerning administrative rules. The committee shall study and review administrative rules and related statutes to determine whether:
>
> 1. Administrative agencies are properly implementing legislative purpose and intent.
> 2. There is dissatisfaction with administrative rules or with statutes relating to administrative rules.
> 3. There are unclear or ambiguous statutes relating to administrative rules.
>
> The committee may make rule change recommendations to the adopting agency and may make recommendations to the legislative council for the amendment or repeal of statutes relating to administrative rules.

[¶ 54] Section 81–04.1–01–28, N.D. Admin. Code, first became effective October 1, 1986, and it has been amended three times since. *See* N.D. Admin. Code § 81–04.1–01–28 (effective Oct. 1, 1986; amended effective March 1, 1988; July 1, 1989; March 1, 1990). The language regarding the taxation of coupon books appeared in amendments effective July 1, 1989. *Id.*

[¶ 55] The July 1, 1989, amendments to N.D. Admin. Code § 81–04.1–01–28 were reviewed at the July 11, 1989, meeting of the Administrative Rules Committee. *Minutes of the Administrative Rules Comm.* 8 (July 11, 1989). The Committee did not challenge the changes to N.D. Admin. Code § 81–04.1–01–28. *Id.* The information provided by the Office of the State Tax Commissioner to the Administrative Rules Committee's July 11, 1989, meeting included the full text of the rule and this description of the subject matter of the changes:

> Sales and Use Tax Rules: These rules define activities subject to and exempt from the sales and use tax, and the procedure for calculating and reporting sales and use taxes.

*Id.* at appendix K.

[¶ 56] The 1991 Report of the North Dakota Legislative Council contains the report from the Administrative Rules Committee's review of administrative rules changed between October 1988 and October 1990. *Report of the N.D. Legis. Council* 11–15 (1991). Table A of the report shows the Administrative Rules Committee reviewed 64 amendments, creations, or repeals of rules adopted by the Tax Commissioner during this period. *Id.* at 15.

[¶ 57] When N.D. Admin. Code § 81–04.1–01–28 was originally enacted, and each time it was amended, the Tax Commissioner or a representative from the Office of the State Tax Commissioner provided information explaining any changes in the rules and answering any questions posed by the Administrative Rules Committee. *See Minutes of the Administrative Rules Comm.* 10–11 (March 29, 1990); *Minutes of the Administrative Rules Comm.* 8 (July 11, 1989); *Minutes of the Administrative Rules Comm.* 9 (March 24, 1988); *Minutes of the Administrative*

*Rules Comm.* 12 (October 14, 1986). The Administrative Rules Committee did not object to the adoption of N.D. Admin. Code § 81–04.1–01–28 or it subsequent amendments. *See Minutes of the Administrative Rules Comm.* 10–11 (March 29, 1990); *Minutes of the Administrative Rules Comm.* 8 (July 11, 1989); *Minutes of the Administrative Rules Comm.* 9 (March 24, 1988); *Minutes of the Administrative Rules Comm.* 12 (October 14, 1986). The Committee was aware of its ability to object to any rule it deemed "unreasonable, arbitrary, capricious, or beyond the authority" of the agency, because the Legislative Council reports reveal objections made by the Rules Committee during this time. *See Report of the N.D. Legis. Council* 12–16 (1987); *see also Report of the N.D. Legis. Council* 11–15 (1991); *Report of the N.D. Legis. Council* 11–15 (1989).

[¶ 58] In footnote 3, the majority argues, "the fact that the eleven members of the Administrative Rules Committee present at the July 11, 1989, meeting did not object to the 1989 amendments to N.D. Admin. Code § 81–04.1–01–28 is not evidence that the Legislative Assembly as a whole approved of the amendments." The majority apparently concludes review by the Administrative Rules Committee can never be evidence of legislative intent, even though the Committee is charged with determining "whether administrative agencies are properly implementing legislative purpose and intent" and the conclusions of the Committee are presented to the Legislative Council and the entire Legislative Assembly through the Legislative Council's Report to the Legislature. *See* N.D.C.C. § 54–35–02.6; *see, e.g., Report of the N.D. Legis. Council,* 11–15 (1991). The majority's conclusion effectively destroys the main objective of the Committee and strains the phrase "brought to the legislature's attention" to

its outermost limits. If the review by a legislative committee created for the purpose of reviewing administrative agency action for consistency with legislative intent is not sufficient evidence to show the legislature's attention was directed to the administrative action, what is?

[¶ 59] Accordingly, the majority's statement, at ¶ 11, that "there is nothing . . . to indicate the Legislature considered the 1989 amendments to N.D. Admin. Code § 81–04.1–01–28 during any of the reenactments" is incorrect because it ignores the Administrative Rules Committee's review of N.D. Admin. Code § 81–04.1–01–28. More important, the majority's conclusion ignores North Dakota law prior to the creation of the Administrative Rules Committee in 1979. *See* N.D.C.C. § 54–35–02.6. In *Payne, Schmutzler, Northern States Power,* and *Voss,* this Court concluded the legislature had acquiesced in an agency's interpretation of a statute without any evidence the legislature's attention had been directed to the agency's interpretation. Here, we have not only the legislature's four-time reenactment of N.D.C.C. § 57–39.2–02.1 since the adoption of N.D. Admin. Code § 81–04.1–01–28, but we also have the Administrative Rules Committee's review of the adoption of N.D. Admin. Code § 81–04.1–01–28.

[¶ 60] In reaching its conclusion that the legislature's attention was not specifically directed to the Tax Commissioner's interpretation of N.D.C.C. § 57–39.2–02.1, the majority has created a standard for legislative acquiescence in an administrative agency's interpretation that differs from the standard for legislative acquiescence in a judicial interpretation. In numerous decisions, this Court has concluded the legislature acquiesced in a judicial interpretation of a statute by failing to amend the statute, or by using the same or similar language, or by reenacting the

statute, without mention of whether the legislature's attention was directed to the judicial interpretation. *See, e.g., Western Nat'l Mut. Ins. Co. v. University of North Dakota,* 2002 ND 63, 643 N.W.2d 4; *Clarys v. Ford Motor Co.,* 1999 ND 72, 592 N.W.2d 573; *State v. Palmer,* 1999 ND 40, 592 N.W.2d 923; *State v. Martineau,* 1999 ND 41, 592 N.W.2d 923; *Lawrence v. Delkamp,* 1998 ND 178, 584 N.W.2d 515; *Hassan v. Brooks,* 1997 ND 150, 566 N.W.2d 822; *Hovland v. City of Grand Forks,* 1997 ND 95, 563 N.W.2d 384; *Krehlik v. Moore,* 542 N.W.2d 443 (N.D. 1996); *City of Bismarck v. Uhden,* 513 N.W.2d 373 (N.D.1994); *In re B.G.,* 477 N.W.2d 819 (N.D.1991); *Midwest Property Recovery, Inc. v. Job Serv. of N.D.,* 475 N.W.2d 918 (N.D.1991); *Wiederholt v. Dir., N.D. Dep't of Transp.,* 462 N.W.2d 445 (N.D.1990); *State v. Gefroh,* 458 N.W.2d 479 (N.D.1990); *Erdle v. Dorgan,* 300 N.W.2d 834 (N.D.1980); *Skinner v. American State Bank,* 189 N.W.2d 665 (N.D.1971); *Lembke v. Unke,* 171 N.W.2d 837 (N.D.1969); *Blair v. City of Fargo,* 171 N.W.2d 236 (N.D.1969); *Portland Credit Union v. Hauge,* 169 N.W.2d 106 (N.D. 1969); *Public Serv. Comm'n v. City of Williston,* 160 N.W.2d 534 (N.D.1968); *Kline v. Landeis,* 147 N.W.2d 897 (N.D. 1966); *Lapland v. Stearns,* 79 N.D. 62, 54 N.W.2d 748 (1952); *McIntyre v. State Bd. of Higher Educ.,* 71 N.D. 630, 3 N.W.2d 463 (1942); *Village of Marion v. C.A. Finch Lumber Co.,* 52 N.D. 32, 201 N.W. 837 (1924); *State v. Poindexter,* 48 N.D. 135, 183 N.W. 852 (1921); *State ex rel. Linde v. Robinson,* 35 N.D. 417, 160 N.W. 514 (1916); *State ex rel. Linde v. Packard,* 35 N.D. 298, 160 N.W. 150 (1916); *State v. Stockwell,* 23 N.D. 70, 134 N.W. 767 (1911); *Minneapolis & N. Elevator Co. v. Traill County,* 9 N.D. 213, 82 N.W. 727 (1900).

### III

[¶ 61] The omissions and misstatements by the majority lead to a conclusion contrary to North Dakota law. Under North Dakota law, the legislature's reenactment of N.D.C.C. § 57–39.2–02.1 after the adoption of N.D. Admin. Code § 81–04.1–01–28 must be regarded as an approval of the interpretation of the Tax Commissioner. *See Payne v. Bd. of Trustees of the Teachers' Ins. & Ret. Fund,* 76 N.D. 278, 35 N.W.2d 553, 557–58 (1948); *Northern States Power Co. v. Board of R.R. Comm'rs,* 71 N.D. 1, 298 N.W. 423, 430–31 (1941); *Voss v. Gray,* 70 N.D. 727, 298 N.W. 1, 4–5 (1941). The legislature, through the Administrative Rules Committee, was aware of and did not object to the Tax Commissioner's adoption of N.D. Admin. Code § 81–04.1–01–28. The legislature's failure to amend N.D.C.C. § 57–39.2–02.1 or object to N.D. Admin. Code § 81–04.1–01–28 demonstrates its acquiescence in the Tax Commissioner's interpretation that coupon books are taxable under N.D.C.C. § 57–32.9–02.1. *See Effertz v. N.D. Workers Comp. Bureau,* 525 N.W.2d 691, 693 (N.D.1994); *Payne v. Bd. of Trustees of the Teachers' Ins. & Ret. Fund,* 76 N.D. 278, 35 N.W.2d 553, 557–58 (1948); *Northern States Power Co. v. Board of R.R. Comm'rs,* 71 N.D. 1, 298 N.W. 423, 430–31 (1941); *Voss v. Gray,* 70 N.D. 727, 298 N.W. 1, 4–5 (1941).

[¶ 62] I would affirm the order of the North Dakota State Tax Commissioner holding American West liable for $20,883.51 in sales tax.

[¶ 63] Dale V. Sandstrom